CHAPMAN, Appellant, vs. PIECHOWSKI, Respondent.

*April 10—April 29, 1913.*

*Master and servant: Injury from unguarded machinery: Statute construed: "Place where labor is performed."*

Sec. 1636*j*, Stats., was intended to protect the health and safety of employees in factories, workshops, and manufacturing establishments; and the phrases "or other place where labor is performed" and "every place where persons are employed to perform labor" were intended to embrace places of the same general character as those enumerated. Such phrases do not include a threshing machine as a "place," within the meaning of the statute. MARSHALL and BARNES, JJ., dissent.

APPEAL from a judgment of the circuit court for Waushara county: BYRON B. PARK, Circuit Judge. *Affirmed.*

The plaintiff brings this action to recover damages for injuries he received while in the defendant's employ doing work as an attendant about the defendant's threshing machine.

At the time of the injury the plaintiff was twenty-two years of age. He had lived and worked on the farm from youth and had worked about threshing-machine outfits as a common laborer. In July, 1911, the defendant employed him as a member of his threshing crew, doing work as he directed, such as hauling water, tending the blower, and oiling and greasing the machine.

The defendant prior to the date of the accident had for years owned a threshing-machine outfit which he operated in Waushara county and other places. During the season of 1911 he had purchased a new machine and had provided it with an old style self-feeder. This new machine had attached to it a conveyor spout through which the partly threshed grain was conveyed from the rear of the machine and emptied into the cylinder chamber at a point directly over the revolving cylinders so as to rethresh it. The use of the old feeder attachment required a change from the original opening, and the defendant cut an opening in the center of the cover over the cylinders about ten inches square. There were no guards placed about this opening.

On the 1st day of August, 1911, while the defendant was operating the machine and plaintiff was engaged about the same in performing his duties, he was directed by the defendant to make some repairs on the machine which required him to stand on top of the cover near this opening. When he started for this place the machine was not running. After the plaintiff had made the repairs the defendant requested him to remove a grease cup from the machine and give it to the defendant, who took it to the engine and filled it with oil. While there the engineer started the machine. When the defendant returned to the machine he gave the plaintiff the

filled grease cup and directed him to replace it.   Plaintiff took the cup from the defendant and stepped over the hole to the other side of the machine.   It appears that plaintiff, in order to replace this cup, knelt down on the cover above the revolving cylinders, with his feet in close proximity to the hole in question, and that while there in this position and so engaged his knee slipped, causing his foot to move and come in contact with the revolving cylinder, mangling, cutting, and bruising it in such a manner as seriously to injure it.   The plaintiff alleges that the defendant negligently failed to securely guard the opening over the revolving cylinder and that while plaintiff was exercising ordinary care he came in contact with the revolving cylinder, resulting in the injury complained of.

At the conclusion of the evidence the court, upon defendant's motion, directed a judgment of nonsuit in his favor. This is an appeal from such judgment.

For the appellant there was a brief by *James L. Kelley* and *Bouck & Hilton,* and oral argument by *Mr. Kelley* and *Mr. John F. Kluwin.*

For the respondent there was a brief by *E. F. Kileen,* attorney, and *J. C. Thompson,* of counsel, and oral argument by *Mr. Thompson.*

SIEBECKER, J.   The trial court held as a matter of law that a threshing machine with a steam-driven revolving cylinder with steel teeth did not constitute a "place of employment" to perform labor within the meaning of the provisions of sec. 1636*j,* Stats.   The original statute forming a part of this section is ch. 549, Laws of 1887, entitled "An act to regulate factories, workshops and other places of employment."   Sec. 1 thereof regulated the number of persons that might be employed in any ". . . such factory, workshop or other place of employment," to be determined by the board of health.   Sec. 2 provided that stationary vats, pans, etc., were to be surrounded with proper safeguards, and that:

"All belting, shafting, gearing, hoists, fly-wheels, elevators and drums of manufacturing establishments so located as to be dangerous to employees when engaged in their ordinary duties shall be securely guarded or fenced so as to be safe to persons employed in any such place of employment."

Sec. 3 prescribed penalties for failure to comply with the provisions of the act and provided, ". . . every day's failure after the first conviction shall constitute a separate offense, after due notice by the state factory inspector." This was amended in the revision of 1898 by changing the phraseology thereof; but the amendments did not affect the substance of the provisions as they existed, nor do the amendments indicate an intent to extend the provisions to include places of employment other than such places as were embraced in the existing statute. This is plainly indicated by the context of the law and the part prescribing the penalties for its violation. As to the last feature it was enacted:

"Any person or corporation which shall neglect for thirty days after the receipt of written notice from the state factory inspector to provide a suitable place for the persons employed by him to work in or who shall fail to make and maintain such safeguards as this section requires and as said inspector shall specify, . . ." shall forfeit the specified amount for each offense.

The provisions of sec. 1636$jj$ do not enlarge the scope of the provisions of the preceding section. This point was urged upon the court in the case of *Schmitt v. Seefeld,* 139 Wis. 459, 121 N. W. 136, and it was there held that sec. 1636$jj$ does not modify the preceding one so as to enlarge its scope or meaning, and that this section refers only to such machinery as the preceding one embraces.

From a consideration of the statutes in all their parts, in the light of the manifest object of the regulation of places specifically enumerated therein and the duties imposed in relation thereto on boards of health and the factory inspector to secure effective enforcement of the statutes, it is apparent that the legislative intent was to protect the health and safety of

employees employed in factories, workshops, and manufacturing establishments, and that the phrases in the statutes "or other place where labor is performed" and "every place where persons are employed to perform labor," in the connection they are used, were intended to embrace places of the same general character as those enumerated, and that the word "place" following the particular words describing the subjects to which the regulation is applied was not intended to extend to all places whatsoever where persons are employed to perform labor. The whole context of the statute suggests that the legislature thought of particular classes of places where employees are surrounded by conditions such as are described, namely, places which to some extent inclose the machinery and the employees, and that it was not intended that the regulation should include all places without restriction as to surrounding conditions and environment. We are of the opinion that the phrases "or other place where labor is performed" and "every place where persons are employed to perform labor" in this statute were not intended to include a threshing machine as a "place" within the meaning of this law. The plaintiff confessedly planted his rights to a recovery on these statutes and hence he has no case against the defendant.

*By the Court.*—The judgment appealed from is affirmed.

MARSHALL, J. (*dissenting*). I must dissent from the conclusion as to the meaning of sec. 1636*j* of the Statutes. In the light of modern needs and thought, legislative efforts to vitalize the same by written law and the judicial duty, all feel, to give literal effect to legislative language to that end,—in the absence of manifest ambiguity and that a reading along restrictive lines will most likely respond to the wishes of the lawmakers,—why should courts survey an enactment from a viewpoint, disclosing to the judicial vision obscurity, when from a different point of sight there is none, and then apply the rules for construction affording an easy pathway to

a restrictive result? It was thought that *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179, and *Kosidowski v. Milwaukee,* 152 Wis. 223, 139 N. W. 189, marked a termination of the rather free use of such rules to discover the legislative purpose in remedial acts of the nature of the one in question.

The legislature,—where the responsibility for changing the common rules seeming to be unsuitable to modern conditions was lodged by the people in the written constitution,—either through want of knowledge of its power or want of appreciation of the necessity for use of it for more than half a century, so tardily responded to the demands of the times that it is not to be wondered at that the court dealt with the early efforts in that regard with such conservatism that ambiguity was seen, often, where it would not be now observed, and then by use of the rule, good in its place, that an act in derogation of the common law, if open to two or more meanings, should be construed most strongly against change and, also, by use of those instrumentalities, valuable in their places, *noscitur a sociis* and *ejusdem generis,* as to render changes slow and difficult, largely because of a high appreciation of duty to effectuate the legislative purpose and not go beyond it. In this age of modern awakening, that conservatism has no proper place. Given place and activity, where reasonable necessity therefor does not exist, it tends to obstruct and give cast of unfriendliness or disposition to defeat when none exists in fact.

Modern progressivism in deed as well as in thought, is the demand of the times and the general order of the day. Judicial appreciation of that was vindicated in the cases to which I have referred, both of which I had the honor to write for the court. It was thought then that a new point of sight had been firmly established, necessary to a proper conception of the legislative purpose in its recent efforts of the character of the one under consideration,—a point of sight casting the whole responsibility for common-law infractions, within con-

stitutional limitations, on the lawmaking power where it belongs.     It is not improbable that laws have been passed without that intelligent consideration which should be devoted to such matters, and that unanimity as to the meaning of the enactments, depending upon the court to minimize the changes, resulting in the creation of more or less prejudice against the judiciary, which is undeserved and might, perhaps, have been largely avoided by holding up the lawmaking power as speaking along broad instead of narrow lines where the former would appear from the literal sense of words.

It seems to me that the logic of the recent cases requires the court to give literal effect to the words "every place where persons are employed to perform labor" in the act in question.     Why regard them as ambiguous at all?     Why wrestle with the rules for construction, particularly the rule of *ejusdem generis,* to restrict the natural ordinary meaning of the words?     That is a rule of necessity.     If there be any contingency of that sort in this case, does it not seem to be quite artificial?     If the legislature did not intend the broad meaning, which in commonplace affairs would be applied to the words, how easy it was to have made that manifest.     Giving such literal effect, there is no absurdity in the enactment. It is perfectly reasonable, looking along the lines of similar legislation, as indicated in the opinion of my brother BARNES. Why not hold the legislature responsible for having intended just what they said and, if the result would seem to throw a rather too harsh a burden upon employers, let the finger of public criticism point to the proper source of the mischief?

I must adhere, firmly, to the logic of the *Koepp Case* and the *Kosidowski Case.*     I believe my brethren are, in general, in accord therewith, but do not appreciate the inconsistency, which seems clear to me, in refusing to see an intent, through the vista of *ejusdem generis* to use words restrictively in the one case and see such intent clearly in the other, though the general purpose of the two enactments is the same.

BARNES, J. (*dissenting*).   The origin of sec. 1636*j*, Stats. (1911), was ch. 549, Laws of 1887.   That act covered several distinct subjects.   Sec. 1 of the law forbade overcrowding of employees in *"any factory, workshop or other place of employment."*   Sec. 2 of the act related to two distinct subjects and read as follows:

"Every stationary vat, pan or other structure with molten metal or hot liquids shall be surrounded with proper safeguards for preventing accidents or injury to those employed at or near them.   All belting, shafting, gearing, hoists, flywheels, elevators and drums *of manufacturing establishments* so located as to be dangerous to employees when engaged in their ordinary duties shall be securely guarded or fenced so as to be safe to persons employed in any such place of employment."

Sec. 3 provided a penalty for noncompliance with the act. This law was carried into the Annotated Statutes of 1889 as sec. 1636*f*, and was revised and amended by the Statutes of 1898, where it appears as sec. 1636*j*.

In the revision of 1898 the first section was enlarged by defining the powers of the local boards of health.   The second section was embodied in a single sentence.   The provision respecting the guarding of receptacles for molten metals was not changed, while a material alteration was made in the one relating to the guarding of dangerous machinery.   This alteration consisted of dropping the words *"of manufacturing establishments"* from the revision; so that while the original act provided for the guarding of shafting and gearing in manufacturing plants only, the law of 1898 required that all such machinery should be securely guarded wherever located.   At least, such seems to me to be the plain meaning of the statute.   It reads:

"The owner or manager *of every place where persons are employed* to perform labor shall surround every stationary vat . . . into which molten or hot liquids are poured or kept with proper safeguards . . . , and all belting, shafting,

gearing, hoists, fly-wheels, elevators and drums therein which are so located as to be dangerous to employees in the discharge of their duty shall be securely guarded or fenced."

It will be observed that while the original act required dangerous machinery to be guarded in manufacturing establishments only, the revision of 1898 required it to be guarded in *"every place" where found.*

It seems to me to be quite an exhibition of temerity or main strength to say that the words *"manufacturing establishments"* and the words "every place" are synonymous. We cannot impute to the legislature the purpose of changing the wording of the original act to mere wantonness, especially where the change is so radical in character. The purpose of the change was manifest and obvious. The idea of protecting employees from dangerous machinery developed gradually. During the eleven years that elapsed between the enactment of the two statutes it was discovered that it was just as serious a matter to lose an arm or a leg in a gearing outside of a factory as inside it, and that it was just as easy to prevent the injury in the one place as in the other, and that the fact that the injury occurred outside of a factory instead of inside afforded little consolation to the injured party and no compensation. It is obvious that the legislature awoke to the fact that justice demanded that all employees should be protected against dangerous machinery, and that there was no logical reason why pariahs should be made of one class of employers and pets of another.

As against manufacturers, sec. 1636*j* has been pretty rigorously enforced. In doubtful cases the court has, I think, been inclined to lean in favor of the employee rather than the employer. I cannot consent to any narrow construction of it when we are called upon to determine what employers are subject to its terms and what are excluded. My own view is that the construction here adopted is both narrow and illogical. When we first have a statute requiring dangerous machinery to be guarded in a factory or workshop and it is

subsequently amended so as to require such machinery to be guarded in *any place* and making no special reference to factories, I cannot think that the two statutes mean the same thing.

The entire state is interested in reducing the number of our cripples to a minimum. Loss of earning power in the individual is a loss to the community at large. ' It is often a direct burden, because the unfortunate and his family, if he has one, must be supported at public expense. Then there is the less selfish, the broader and more humanitarian consideration, to wit, the prevention of pain, suffering, mortification, and loss of ability to earn a livelihood in the unfortunates who become maimed and disabled through preventable causes. There is no more reason why an employee around the cylinder of a threshing machine should not be protected, where concededly protection could easily be afforded, than an employee around a piece of machinery no more dangerous when located in a factory. The loss in case of injury is just as great, the moral duty on the part of the employer to safeguard the employee is just as great, and I think the legal duty under a fair construction of the statute is just as great. How can it be said that, where a man is employed to oil and grease a threshing machine and put on belts and look after the machinery therein, the machine, and the ground or floor on and around where it stands, is not a *"place where persons are employed"*? The ratiocination by which the court reached the conclusion, as it necessarily did (in *Herning v. Holt L. Co., ante,* p. 101, 140 N. W. 1102), that a steam engine temporarily set up out in the woods to load logs on cars, and the support on which it rested, was a *"place"* of employment while a threshing machine temporarily set up to thresh grain, and its immediate surroundings, is not, does not appeal to me. It savors of class distinction where none was intended, of throwing the protecting arms of the court around a numerous class of employers to which the legislature did not intend to extend immunity. In this connection I desire to

refer to still another of our late decisions.   Sec. 1636—81 provides that a person employing another in labor of any kind in the "erection, repairing, altering or painting of any house, building or *structure*" shall not furnish unsafe scaffolding, hoists, etc.   Under this statute we held a city liable that was engaged in replacing water mains, because the employee was working on a *"structure;"* within the meaning of the statute.   *Kosidowski v. Milwaukee,* 152 Wis. 223, 139 N. W. 189.   So it is now judicially determined that a person working around a threshing machine *is not* working at a "place," while a man engaged in lowering water pipes into a trench *is* working on a *"structure."*   In another case decided at the same time (*Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179), it was held that where an employee was directed to build a scaffold and wash down the ceiling so that it could be painted, the plaintiff while washing the ceiling was employed in *"painting,"* within the meaning of that word as used in sec. 1636—81, although the employee was not a painter and there was nothing to show that it was intended that he should do any painting.

The opinion proceeds upon the theory that the word "place," where used in the provision relating to guarding machinery, has the same meaning that the word has when used in the part of the statute which prevents overcrowding in "any factory, workshop or other place" where labor is performed, and that the words "other place" as there used mean a place like unto or akin to a factory or workship.   In construing the kindred statute, sec. 1636—81, the precise contention which we have before us was made.   It was claimed that the words "mechanical contrivances" in the phrase "scaffolding, hoists, stays, ladders or other mechanical contrivances" meant something akin to "scaffolding, hoists, stays or ladders."   The claim was rejected.   It was said, after discussing the purpose which the legislature had in mind in passing the statute, "that the rule of *ejusdem generis* does

not apply to restrict the meaning of any of the descriptive words in the law." Continuing the court said:

"So the word 'repairing' stands by itself, in practical effect. It is not to be restricted by anything which precedes it or follows it. The same is true of the term 'scaffolding' and the words 'mechanical contrivance.' Each is to be given the broad comprehensive meaning necessary to accomplish the manifest purpose of the act. Both the work and the structure or contrivance may be as well inside a building as outside and the particular distance above the floor or ground is not material so long as the work and the contrivance answer fully to the calls of the law." *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 320, 139 N. W. 179, 186.

So I reject the construction placed on the statute by the court, for two reasons. The provision of sec. 1636*j* dealing with overcrowding in factories, workshops, and places of employment is separate and distinct from the one which requires the owner and manager of every place to securely guard dangerous machinery. The words "building or workshop" are not used in connection with the safeguarding of machinery and should not be read into this part of the statute. If they are in or are read in, then the rule of *ejusdem generis* should not be applied to the words "other place," where they follow the words "factory" and "workshop," under the rule of the *Koepp Case.* Before concluding this branch of the discussion I desire to refer to the case of *Hermann v. Port Blakely M. Co.* 71 Fed. 853, 856, wherein it is held that the word "place," as used in the rule that a master must provide a safe place for his servants in the performance of their duties, means *"the premises where the work is being done."*

It is suggested that the final provision of sec. 1636*j,* as it appears in the Statutes of 1898, in some way restricts the meaning of what precedes it. It reads as follows:

"Any person or corporation which shall neglect for thirty days after the receipt of written notice from the state fac-

tory inspector to provide a suitable place for the persons employed by him to work in or who shall fail to make and maintain such safeguards as this section requires and as said inspector shall specify, shall forfeit not to exceed twenty-five dollars for each offense, and every day's neglect or failure, after a conviction hereunder, shall constitute a separate offense."

I do not conceive that this provision limits or restricts the meaning of the one which precedes it. It deals not with liability or even duty to employees, but provides a penalty for failure to do certain things. I observe no reason why the owners of threshing machines are not amenable to the notice provided for as well as other operators of dangerous machinery. If the power to inspect such a machine is not otherwise expressly provided for by statute, it is here conferred by plain implication. The power of factory inspectors is by no means confined to factories. It extends to elevators and fire-escapes in public or semi-public buildings and to many other things. Secs. 1021$e$ to 1021$h$, Stats. (1898). They may order "bull-wheels, fly-wheels, tumbling-rods, elevator wells, stairways, shafting or dangerous machinery of any kind to be inclosed or otherwise guarded so as to protect workmen or others." Sec. 1021$h$, Stats. (1898). Their duties in this regard are not confined to factories. Tumbling-rods are things which the writer has rarely heard of except in connection with the old horse-power threshing machine.

Sec. 1636$j$ was amended and rewritten in 1911, but no change was made therein which affects the present case. Ch. 470, Laws of 1911.