[Sac. No. 2240.   Department Two.—October 14, 1916.]

THEODORE WILLIAMS, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

NEGLIGENCE — RAILROAD — TRESPASSER UPON PRIVATE RIGHT OF WAY.— The engineer of a railroad train being operated upon the railroad's private right of way at a usual speed, at a usual time, and under adequate working equipment, is not charged with the duty of watching for trespassers upon the right of way. His duty is fulfilled if, upon the discovery of such a trespasser, at and after the time of the discovery, he adopts reasonable precautions to avoid injuring him.

ID.—EMPLOYMENT OF MINORS—ACT OF 1911 REGULATING—FORBIDDEN HOURS OF EMPLOYMENT—WATCHMAN AT RAILROAD TUNNEL.—Section 1 of the act regulating the employment and hours of labor of children (Stats. 1911, pp. 282, 910), which prohibits the employment of minors under the age of eighteen for more than nine hours in any one day in any manufacturing, mechanical, or mercantile

establishment, "or other place of labor," should be construed to forbid such employment only in the places specified and in other like establishments, and does not limit the hours of employment of a minor as a watchman to look out for a tunnel upon a railroad track. Section 2 of such act forbids the employment of such minor in any occupation between the hours of 10 P. M. and 5 A. M.

ID.—EMPLOYMENT OF MINOR AS WATCHMAN FOR MORE THAN NINE HOURS A DAY.—In an action against a railroad company to recover for the death by the alleged negligence of the defendant of a minor under the age of eighteen, who was employed by the company as a watchman of a tunnel upon its track, and whose hours of employment were from 12 o'clock noon to 12 o'clock midnight of each day, it was error to instruct the jury that the employment of the minor in such occupation for more than nine hours a day was forbidden by such statute.

ID.—EMPLOYMENT OF MINOR TO WORK DURING FORBIDDEN HOURS—INJURY DURING PERMISSIBLE WORKING HOURS—PRESUMPTION OF ABSENCE OF CONTRIBUTORY NEGLIGENCE.—In such action, where the death of the minor employee occurred prior to 10 P. M., the mere fact that by the terms of his employment it was contemplated that he should work during the forbidden hours does not warrant the presumption contained in the Workmen's Compensation Act of 1911 (Stats. 1911, p. 796), to the effect that "it shall be conclusively presumed that such employee was not guilty of contributory negligence in any case where the violation of any statute enacted for the safety of employees contributed to such employee's injury."

ID.—PENALTY—ACTION FOR DAMAGES.—Such action is not one to enforce a penalty for a violation of the statute.

ID.—VIOLATION OF STATUTE FOR SAFETY OF EMPLOYEES—CONTRIBUTORY NEGLIGENCE.—Such provision of the Workmen's Compensation Act of 1911 means, that if an employer shall have violated any statute enacted for the safety of his employees, and this violation shall have contributed to an employee's injury, the employer shall not be allowed to avail himself of the defense of contributory negligence which otherwise would have been open to him.

ID.—VIOLATION OF STATUTE MUST CONTRIBUTE TO INJURY.—To warrant such presumption in a civil action by the employee to recover damages, not only must injury be shown, but it must further be shown that the employer's violation of a statutory duty contributed to this injury.

ID.—CONTRACT VIOLATIVE OF STATUTE REGULATING TERMS OF EMPLOYMENT.—A mere *contract* of employment can never be a contributing cause to an injury to an employee; and if an injury results during the course of employment under a contract which is denounced and forbidden by the law as to certain of its terms, it must be shown

that the employee's doing of the act, forbidden to the employer, in some manner contributed to his injury.

ID.—CONTRACT LIMITING HOURS OF LABOR.—Under statutes limiting the hours of labor, it must be shown not only that the employee was laboring during the forbidden or excessive hours, but that his injuries in some proximate way resulted from this fact.

APPEAL from a judgment of the Superior Court of Stanislaus County, and from an order refusing a new trial. L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

George F. Buck, for Appellant.

J. W. Hawkins, and F. O. Hoover, for Respondent.

HENSHAW, J.—This action was brought by Theodore Williams in his own behalf and that of his wife, seeking a recovery for the death of their son, charged to have been occasioned by the negligence of the defendant. The complaint alleged that Glen L. Williams, the son, was on the eighth day of October in the employ of the defendant as a watchman on its railroad right of way near the station of Tormey, in Contra Costa County, California, and that he had been employed by the defendant for some time prior to the eighth day of October; that by the terms of his employment he was required "to work and be on duty as such watchman daily from 12 o'clock noon to and until 12 o'clock midnight," and that he was "employed by the defendant to act as such watchman and to work and to be on duty from 12 o'clock noon of each day to and until 12 o'clock midnight of each day"; that on the eighth day of October Glen Williams was seventeen years, four months, and twenty days of age; that on the eighth day of October, "while said Glen L. Williams was employed by said defendant as a watchman, as aforesaid, and while the said Glen L. Williams was on duty as such watchman, and while said Glen L. Williams was regularly performing his duties as such watchman, he was struck by a train operated by the defendant," and on the following day died of the injuries thus sustained. Plaintiff alleged "the fact to be that the defendant was negligent in the operation of said train which struck said Glen L. Williams in that the said defendant did

not warn the said Glen L. Williams of the approach of said train and no warning bell or whistle was sounded, and by reason of the failure of the defendant to so warn the said Glen L. Williams and to sound a whistle or to sound a bell the said Glen L. Williams was unable to and did not observe the approach of said train, and was run down and struck by said train, and died as a result of the injuries received thereby.'' The answer admitted that Glen L. Williams was on the eighth day of October in the employ of the defendant as a watchman on the railroad right of way of defendant, and that he had been so employed for some time prior to the eighth day of October. It also admitted that ''by the terms of said employment Glen L. Williams was required by said defendant to work and be on duty as such watchman daily from 12 o'clock noon to and until 12 o'clock midnight,'' and that he was ''employed by the defendant to act as such watchman and to work and to be on duty from 12 o'clock noon of each day to and until 12 o'clock midnight of each day.'' The answer admitted that Glen L. Williams was struck by a train operated by defendant, but denied that at the time he was so struck he was acting in his employment as watchman, and denied that when he was so struck he was on duty as watchman, and denied that when struck he was in any way acting in the service of or performing any service for the defendant. And in this connection the answer affirmatively alleged that at the time he was so struck and injured he had left his place of duty as such watchman, in violation of the duties of his employment, and was a mere trespasser upon the railroad track when struck by the train. The answer further denied the allegations of negligence in the operation of the train, denied all negligence, and averred that the deceased ''was struck by said train by reason of his own carelessness and negligence in failing to inform himself of the approach of defendant's train in time to step from defendant's railroad track and avoid being struck.'' The evidence disclosed that the deceased was of the age pleaded; that, at the solicitation of his uncle, who was the station agent at Tormey, he was employed as an extra watchman at tunnel No. 1, near the station of Tormey. His duties were to watch tunnel No. 1 and to keep all suspicious characters from loitering in or about the tunnel, so that no injury might be done to it. His hours of duty were from 12 o'clock noon to 12 o'clock midnight. He had been employed and had

worked for about a week. Over this division, in railroad parlance, the trains move east and west, over double through-line tracks, one being the track for the east-bound traffic, the other for the west-bound traffic. The station of Tormey by the railroad men is described as west of the station of Selby, and tunnel No. 1 is still farther west of Tormey station—west being toward the city of Oakland, east being toward the city of Sacramento. The deceased's uncle, who had secured his employment, testified that he sent for the boy and when he came "looked him over and considered that he was a wide-awake lad, and so reported to the agent of the railroad company, who replied that it was all right and put him to work." Instructions touching his conduct and work were given to the deceased by his uncle. The uncle emphasized his instructions to the boy to keep off the "working tracks" and not to walk on a "live track." He was further instructed that if he walked on a live track to walk "facing the traffic," thus to walk to the west upon a track carrying east-bound traffic, and to the east upon a track carrying the west-bound traffic, so that any train would be visible because approaching him from the front. He was told of the imminent danger of walking on the live tracks, because trains were liable to pass at any time, "and I told him that if he walked on a dead track he would never get hit. . . . If a man goes and kills himself by carelessness, that is up to him."

The deceased was killed by an east-bound express train while walking with his back to the traffic, that is to say, while walking from the tunnel toward Selby upon the east-bound track. He was struck by a regular express train running at its schedule rate of speed and passing the place of the accident on schedule time, about 9:30 o'clock of the evening of October 8th. He was, of course, not at his post of duty—the tunnel —but had walked from the tunnel easterly past the Tormey station and well on to the Selby station when the train struck him. He had been furnished a night lantern and instructed to get oil for his lantern from a Greek known as Nick Paul, whose home was on the line of the railroad between Tormey station and Selby and near to Selby. It is in evidence that he had stopped at Nick Paul's on his way to work to secure oil, but Paul was away, and he did not get it. It is fairly inferable from the evidence and from the condition of the oil cup of his lantern found after the injury that his lantern had

burned or was on the point of burning out, and that he had left the tunnel to go to Nick Paul's to secure more oil. In addition to the physical conditions already pointed out, it should be added that there was a by-path leading from the tunnel to Selby along the line of the railway tracks, over which one could walk with perfect security, and that the deceased's older brother had advised him to take this footpath or trail.

Touching the operation of the train, the uncontradicted testimony is that the engine was equipped with a powerful electric headlight, which was operating perfectly. Also it was equipped with an automatic bell, which rang continuously. The engineer sounded his whistle after leaving the tunnel and taking the curve at Tormey. The train was moving at about thirty-three miles an hour. As near as the engineer could estimate, he was about fifty feet distant from the man when first he discovered him upon the track; his bell was ringing; he immediately sounded his whistle and applied the brakes, but not in time to prevent the accident. Because of the curve, the headlight did not illumine the track for any great distance ahead.

In addition to the general verdict which the jury returned in favor of the plaintiff, it was called upon to answer certain special issues submitted to it. The jury found that the deceased was struck while he was on defendant's east-bound track, and that the defendant's engine bell was ringing as the train approached him; also that the whistle of the engine had been sounded after leaving the tunnel. The jury declared its inability to say whether or not the deceased was "in the possession of his faculties of sight and hearing" at the time of the accident, notwithstanding the fact that there was no evidence to show that he was not, and there was evidence to show that he was a wide-awake lad. It returned the same answer, "We do not know," to interrogatories asking them to declare whether or not Glen Williams "was unable to observe the approach of the train," and whether, "as a matter of fact, he was unable by the use of his eyesight or sense of hearing to observe the approach of defendant's train in time to have escaped injury." The jury further found that the defendant warned Glen Williams of the approach of the train by its bell only, and to the following compound question, "If you find that the defendant did not warn Glen Williams of the ap-

proach of the train and no warning bell or whistle was sounded, was the defendant negligent in any of those respects?" answered "Yes."

So far as we have gone the case presents no exceptional features. It is the usual one of damages for the death of an employee of a railroad, predicated upon allegations of the railroad's negligent operation of its train, and met in answer by a denial of this negligence, and a charge that the accident occurred solely through the negligence of the employee. We have thus at length set forth these evidentiary matters to illustrate the importance of certain instructions which the court gave, which instructions in their legal bearing differentiate this case from similar actions for damages. Thus, it is clear that the evidence fails to establish the negligent operation of the train charged against defendant. The train was being operated upon the defendant's private right of way at a usual speed, at a usual time, and under adequate working equipment. Upon the engineer of such a locomotive is not imposed the duty of watching for trespassers upon this right of way. His duty is fulfilled if upon the discovery of such a trespasser, at and after the time of the discovery, he adopts reasonable precautions to avoid injuring him. It is unquestioned that in this case the discovery was made at a time and under circumstances when, using the appliances at hand, it was impossible to stop the train in time to avoid striking the young man. We have used the word "trespasser." If the deceased be not regarded as a trespasser, but as an employee, conversant, as this deceased was, with the tracks and their traffic, still less reason had the engineer to suppose that such an employee would be upon the track at all, or, if upon the track, would not avail himself of the means ready at hand to step one side to a place of safety. When all these matters are considered, in connection with the unquestioned negligence of the deceased in walking with his back to the traffic along a track with whose use he was perfectly familiar, as to the danger of which use he had been warned, and which danger he must have known, the conclusion is unescapable that he met his death solely through his own negligence, and that his uncle's language is sadly in point, "If a man goes and kills himself by carelessness, that is up to him."

Coming now to the matters which differentiate this case from the ordinary, at the time of this accident there stood

upon our books two laws: First, an act regulating the employment and hours of labor of children, and prohibiting the employment of minors under certain ages. This law declared as follows:

"Par. 1. No minor under the age of eighteen shall be employed in laboring in any manufacturing, mechanical, or mercantile establishment, or other place of labor, more than nine hours in one day, except when it is necessary to make repairs to prevent the interruption of the ordinary running of the machinery, or when a different apportionment of the hours of labor is made for the sole purpose of making a shorter day's work for one day of the week, and in no case shall the hours of labor exceed fifty-four hours in a week.

"Par. 2. No minor under the age of eighteen years shall be employed or permitted to work between the hours of 10 o'clock in the evening and 5 o'clock in the morning."

The remaining provisions of this law provided for permits, under which children of the specified ages might be exempted from the operation of the law and allowed to labor. No penalty was imposed for the violation of its terms. (Stats. 1911, p. 282.) A similar enactment is found in the statutes of 1911, at page 910. This later act contains language identical with paragraphs 1 and 2 above quoted, and provides as a penalty for a violation of its terms a fine of not less than fifty dollars or more than two hundred dollars, and imprisonment for not more than sixty days, or both fine and imprisonment.

The second of these laws is an act relating to the liability of employers for injury or death sustained by their employees, section 1 of which is as follows:

"In any action to recover damages for a personal injury sustained within this state by an employee while engaged in the line of his duty or the course of his employment as such, or for death resulting from personal injury so sustained, in which recovery is sought upon the ground of want of ordinary or reasonable care of the employer, or of any officer, agent, or servant of the employer, the fact that such employee may have been guilty of contributory negligence shall not bar a recovery therein where his contributory negligence was slight and that of the employer was gross, in comparison, but the damages may be diminished by the jury in proportion to the amount of negligence attributable to such employee, and it shall be conclusively presumed that such employee was not

guilty of contributory negligence in any case where the violation of any statute enacted for the safety of employees contributed to such employee's injury." (Stats. 1911, p. 796.)

The court gave to the jury instructions tendered by both the defendant and the plaintiff. Those tendered by the defendant treated of the law of negligence and of contributory negligence in unobjectionable form. They were addressed, as usual, to different phases of the evidence. They declared, for example, that "The jury are instructed that if they believe from the evidence that the defendant exercised ordinary and reasonable care in warning the said Glen Williams of the approach of its train, then your verdict must be for the defendant." Again: "All that is required of the defendant is that it produce enough evidence to offset the effect of plaintiff's evidence, and if at the end of the case the plaintiff has not shown by a preponderance of evidence that the defendant was guilty of carelessness or negligence directly causing the accident or injury complained of, or if the evidence is equally balanced, then I instruct you that your verdict in this case must be in favor of the defendant."

Upon the other hand, at the request of the plaintiff, the court gave instructions which destroyed all the force and effect of the instructions to which we have just adverted. Or, if it be said that they did not destroy all their force and effect, then they left the law of the case before the jury in hopeless contrariety and confusion.

It is of the giving of these instructions last referred to that appellant complains. Their nature will be shown by the following extracts:

"III.

"You are instructed that the law provides that no minor under the age of eighteen years shall be employed in laboring in any manufacturing, mechanical or mercantile establishment or other place of labor more than nine hours in one day except when it is necessary to make repairs to prevent the interruption of the ordinary running machinery, or when a different apportionment of the hours of labor is made for the sole purpose of making a shorter day's work for one day of the week, and in no case shall the hours of labor exceed fifty-four hours in a week. The law also provides that no minor under the age of eighteen years shall be employed or per-

mitted to work between the hours of 10 o'clock in the evening and 5 o'clock in the morning.

"The law also provides that it shall be conclusively presumed that a person so employed was not guilty of contributory negligence in any case where the violation of a statute enacted for the safety of employees contributed to such employee's injury and it shall not be a defense.

"The law makes it unlawful to employ a minor under the age of eighteen years to work between the hours of 10 o'clock in the evening and 5 o'clock in the morning, and making it unlawful to employ minors in places and establishments above named for more than nine hours in one day as I before instructed you are statutes enacted for the safety of employees.

## "IV.

"Under the admissions of the defendant as to the age of the deceased at the time of his employment and as to the terms of the employment as regards the hours he was to work, you are instructed that the defendant violated the terms of the statute before referred to, and you are therefore instructed that the defendant is liable in damages regardless of the imprudence or negligence of the deceased if he was killed by defendant's train while he was engaged in the line of his duties or the course of his employment by defendant as appears by admissions of the defendant. . . .

## "VII.

"In this state the employment of a minor under the age of eighteen years to either work between the hours of 10 P. M. and 5 A. M., or to work more than nine hours in a day in a manufacturing, mechanical, or mercantile establishment or other place of labor, except when it is necessary to make repairs to prevent the interrupting of the ordinary running of machinery, or when different apportionment of the hours of labor is made for the sole purpose of making a shorter day's work for one day of the week or to work more than fifty-four hours in one week, is contrary to the law and unlawful and constitutes negligence *per se;* that is, it is negligence of itself. In case of such unlawful employment it is presumed that the employee is not guilty of contributory negligence and the employer is responsible to the father for the death of a minor child employed contrary to such law, if such minor child is injured while it is engaged in the line of its duty or the course of its employment.

## "VIII.

"You are instructed that the defendant's allegation of contributory negligence cannot be considered by you if you find that the deceased met his death by reason of his employment by defendant in violation of the statute heretofore referred to regulating the hours during which a minor may be employed to work, and as the result of an accident which occurred while he was engaged in the line of his duty or the course of such employment."

The legal import of these instructions and the others of like character is this: That regardless of the imprudence or negligence of the deceased and of defendant's freedom from negligence, the defendant is liable in damages under the provision of the Employers' Liability Act above quoted (Stats. 1911, p. 796), because of the admissions in the pleadings that the deceased was under eighteen years of age, and by the terms of his employment was to labor more than nine hours a day, and by the terms of his employment was to labor between the hours of 10 P. M. and 5 A. M. These admissions the court by its instructions charged the jury met the conditions prescribed by the Employers' Liability Act, in that they established a violation of the statute enacted for the safety of employees, which violation "contributed to such employee's injury." Also by these instructions, as matter of law, the court told the jury that a minor employed as was this one, to watch a tunnel along a railroad right of way, came within the provisions of paragraph 1 of the act regulating the employment and hours of labor of children in this, that Glen Williams was, within the meaning of the law, "employed in laboring in a manufacturing, mechanical, or mercantile establishment, or other place of labor." And, finally, the court instructed the jury, as matter of law, that even though the employee's injury occurred before he had labored more than nine hours, in violation of the law, or although the employee's injury occurred earlier than 10 o'clock P. M. and not within the inhibited hours between 10 P. M. and 5 A. M., nevertheless if the *contract* of employment *contemplated* labor for more than nine hours, or during the inhibited hours, the employer was responsible because of this contract, even though in fact the injuries did not result when the employee was laboring more than the prescribed nine hours, or between the hours of 10 P. M. and 5 A. M.,

and without regard to the question whether his laboring during these forbidden times contributed to his injury.

That we have in no respect misunderstood and so misstated the purport of these instructions is conclusively established by the position which respondent's attorney, who proposed them, takes in regard to them. Thus he says: "The court would certainly not, if this case were a prosecution for the violation of the statute, allow the defendant to say: 'Yes, we employed the boy to work twelve hours and he went to work under that understanding; but we are guiltless of unlawfully employing him, because the boy was killed just before he had completed nine hours of work.' Our contention is that every minute of the time of the engagement to work by the minor would have been of the prohibited character." And again: "The other branch of the statute is still less open to question as to its meaning. When it says no minor shall be 'employed or permitted to work between the hours of 10 o'clock in the evening and 5 o'clock in the morning,' it can mean nothing other than that the minor shall not be employed to work, or permitted to work, during the prohibited hours. That statute would certainly be violated the minute the minor became employed so to work."

That we may come directly to a consideration of the legal propositions thus presented, we will pass over appellant's contention that the complaint is legally insufficient to charge upon the matters covered by the instructions, and that it rests solely in its allegation of negligence upon the operation of the train. The first proposition which invites attention is this: Was the employment of the deceased within the purview of paragraph 1 of the act prohibiting the employment of minors? That act, it will be noted, limits the hours of employment of minors to nine hours a day only when those minors are under the age of eighteen and when they are employed "in laboring in any manufacturing, mechanical, or mercantile establishment, or other place of labor." Clearly this minor was not laboring in any manufacturing, mechanical, or mercantile establishment. The employment of a watchman to look out for a tunnel upon a railroad track is as foreign to employment in a manufacturing, mechanical, or mercantile establishment, as would be the employment of a minor to herd sheep. What, then, is meant by the added phrase, "or other place of labor?" If, as respondent contends, this throws wide open

the door and includes all employments, then the previous limiting words, "manufacturing, mechanical, or mercantile establishment," become useless surplusage and the law should have read, and would have read, no minor under the age of eighteen shall be employed "in any place of labor" or "at any labor." Unquestionably the statute meant to forbid the employment of minors for more than nine hours a day in manufacturing, mechanical, mercantile, and other like establishments. Such is not only the uniform rule of construction under all of the authorities under the application of the familiar doctrines of *noscitur a sociis* and *ejusdem generis,* but it is borne out and made peculiarly cogent in the present statute by virtue of the language which immediately follows, by which language the law is not violated if the minor is employed for more than nine hours "when it is necessary to make repairs to prevent the interruption of the ordinary running of the machinery." So plain do we take this proposition to be, that it requires no further amplification, and it is sufficient to cite in its support, *Chapman* v. *Piechowski,* 153 Wis. 356, [45 L. R. A. (N. S.) 687, 141 N. W. 259]; *Bucher* v. *Commonwealth,* 103 Pa. 528; *Raeder* v. *Bensberg,* 6 Mo. App. 445; *United States* v. *1,150½ Pounds of Celluloid,* 82 Fed. 627, [27 C. C. A. 231]; *Jensen* v. *State,* 60 Wis. 577, [19 N. W. 374]; *Whitfield* v. *Terrell Compress Co.,* 26 Tex. Cr. App. 235, [62 S. W. 116]; *City of Lynchburg* v. *Norfolk & W. R. Co.,* 80 Va. 237, [56 Am. Rep. 592]; *Wicker* v. *Comstock,* 52 Wis. 315, [9 N. W. 25]. Since, then, the deceased's employment did not come within the class where the hours were limited to nine hours a day, the consideration of this proposition comes to a close with the necessary declaration that the instructions to the jury so declaring were manifestly erroneous.

However, it is indisputable that the law did forbid the employment of this or any minor in any occupation between the hours of 10 P. M. and 5 A. M. It is conceded that, under the *terms* of this minor's employment, it was contemplated that he should work during the forbidden hours between 10 P. M. and 12 midnight. And, finally, it is indisputable that he was not working during these forbidden hours when he met his death, that death, by all the testimony, having occurred before 10 o'clock, and at about half-past 9 o'clock. The next question presented for consideration, then, is the soundness of the

court's instructions holding that by virtue of the defendant's admission that the *terms* of employment did include these two inhibited hours, the defendant had violated a statute designed for the protection of the employee, was therefore as matter of law conclusively guilty of negligence, and was debarred from tendering in defense of this negligence any issue of the negligence of the deceased.

We need not here be at great pains to discuss the question propounded by respondent and above quoted touching the meaning of the law if this action were an action to enforce a liability imposed for a violation of the statute (Stats. 1911, p. 910, *supra*), for this is not an action to enforce a penalty for a violation of the act. If it were so, the judgment could only be a judgment of fine, imprisonment, or both. Therefore we need not delay to consider whether the act is violated so far as concerns its penal provisions by a mere *contract* of employment, without illegal labor under that contract, or whether the forbidden labor must have been performed before liability under the contract attaches. Suffice it here to say that such laws are enacted in the exercise of the police power for the protection and well-being of minors, that protection and well-being taking the form of forbidding employers to use the services of such minors for more than a given number of hours or during certain named hours. And with this manifest purpose of the act in view, the uniform holding is that the law is violated by the illegal *time of employment* and not merely by the illegal *contract of employment* when under it no illegal period of employment has taken place. Enough here to cite *In re Spencer,* 149 Cal. 396, [117 Am. St. Rep. 137, 9 Ann. Cas. 1105, 86 Pac. 896], where the statute declared that "no minor under the age of sixteen shall be employed or permitted to work in any mercantile institution, etc.," and this court declared that the language meant "that no child under sixteen years of age shall work at any gainful occupation" during the inhibited hours, and that "no minor under sixteen shall work in any mercantile institution" during the inhibited hours. In addition it is sufficient to cite *State* v. *Deck,* 108 Mo. App. 292, [83 S. W. 314]; *Fortune* v. *Hall,* 122 App. Div. 250, [106 N. Y. Supp. 787]; *Commonwealth* v. *Riley,* 210 Mass. 387, [Ann. Cas. 1912D, 388, 97 N. E. 367]; *School Dist. etc.* v. *Dilman,* 22 Ohio St. 194; *People* v. *McKinney,* 10 Mich. 54.

We have said, and of course it is indisputable, that this is not an action to enforce a penalty for a violation of the statute. What in fact respondent's counsel here has sought to do, and what in the trial court he successfully did, was to invoke as applicable to the facts of his case the provision of the Workmen's Compensation Act above quoted, to the effect that "it shall be conclusively presumed that such employee was not guilty of contributory negligence in any case where the violation of any statute enacted for the safety of employees contributed to such employee's injury."

The meaning of this language is perfectly plain. It is that if an employer shall have violated any statute enacted for the safety of his employees, and this violation shall have contributed to an employee's injury, the employer shall not be allowed to avail himself of the defense of contributory negligence which otherwise would have been open to him. In the case of an action to enforce a penalty for the violation of the statute, the right of action is in no wise dependent upon the circumstances of injury or noninjury to the employee. In the civil action to recover damages, not only must injury be shown, but it must further be shown that the employer's violation of a statutory duty contributed to this injury. This language is not unusual, nor is any doubt left by the adjudications as to what is meant when the law declares that the violation of a statute must contribute to an employee's injury. Endless illustrations come readily to mind. The law requires an automatic door or gate to be placed in front of every elevator used in business establishments. An employee, engrossed in reading a bill of lading, and forgetful of the absence of the gate, walking to the elevator falls down the shaft and is injured. The violation of the statutory duty to maintain the gate has contributed to the employee's injury, and the employer is forbidden to defend upon the ground that the negligence of the employee in reading the bill of lading when he approached the elevator contributed to his injury. But, upon the other hand, the same employee under the same circumstances, while walking to the elevator, stumbles over a box and so is injured. The employer is still in the same position touching his violation of a statutory duty, but that violation in no wise contributed to the employee's injury. So far as that particular accident was concerned, notwithstanding his violation of the statutory duty, the employer was not only not guilty of any

negligence *per se,* but he was not guilty of any negligence at all, and he would not therefore be forbidden by the law to tender the issue of contributory negligence. Such has been the holding of this court, and of every court whose decisions have come under observation. Thus in *McKune* v. *Santa Clara V. M. & L. Co.,* 110 Cal. 480, 486, [42 Pac. 980]: "That the failure of any person to perform a duty imposed upon him by statute or legal authority is sufficient evidence of negligence has been repeatedly declared by this court. (*Siemers* v. *Eisen,* 54 Cal. 418; *Driscoll* v. *Market Street etc. Ry. Co.,* 97 Cal. 553, 33 Am. St. Rep. 203, [32 Pac. 591].) But the principle has this very obvious limitation: The act or omission must have contributed directly to the injury, or, however improper or illegal it may have been in the abstract, no action for damages can be founded upon it." To like effect are *Manning* v. *App Consol. Gold Min. Co.,* 149 Cal. 35, 45, [84 Pac. 657]; *Thomas* v. *German General Benevolent Soc.,* 168 Cal. 183, [141 Pac. 1186]; *Monson* v. *La France Copper Co.,* 39 Mont. 50, [133 Am. St. Rep. 549, 101 Pac. 243]; *Inland Steel Co.* v. *Yedinak,* 172 Ind. 423, [139 Am. St. Rep. 391, 87 N. E. 229]; *St. Louis & Iron Mt. Ry.* v. *McWhirter,* 229 U. S. 265, [57 L. Ed. 1179, 33 Sup. Ct. Rep. 858]; 21 Am. & Eng. Ency. of Law, 2d ed., 480.

Under this plainly established rule the determinative questions calling for answer are: Did defendant violate the statute, and, if it did, did this violation contribute to the deceased's injury? For, as is said in *Inland Steel Co.* v. *Yedinak,* 172 Ind. 423, [139 Am. St. Rep. 391, 87 N. E. 229], a case relied on by respondent: "Appellant's insistence that a causal connection must be shown between the negligence charged and the injury complained of is undeniably true. A violation of these penal statutes constitutes negligence *per se,* but to make such negligence actionable it must be a proximate cause of the injury for which the action is brought."

From what has been said it clearly follows that a mere *contract* of employment can never be a contributing cause to an injury. Equally plain is it that if an injury results during the course of employment under a contract which is denounced and forbidden by the law as to certain of its terms, it must be shown that the employee's doing of the act, forbidden to the employer, in some manner contributed to his injury. To

illustrate: A minor is employed to labor from 8 o'clock in the evening until 12 o'clock night. On the first day of his employment he labors for the full period. In engaging and permitting this employment the employer has violated the statute. On the second evening of his employment at 9 o'clock he is injured. He was not, at the time of his injury, working during any forbidden hour. His injury in no way could have been occasioned by the fact that he was employed to work between 10 and 12 o'clock at night, because he was not even working between those hours when injury resulted. There is, therefore, no possible causal connection between the injury and the withdrawal of the protection of the statute. The fact that upon the day previous he had worked during illegal hours and that his employer had thus violated the statute, was in no sense a contributing cause to his injury upon the following day at an hour of labor which the law did not forbid. The only connection between his injury and his labor was his contract of employment, or, in other words, that he was there laboring because he was there employed to labor. But this connection is not the causal connection—the contributing cause—which the law declares. So fundamentally true is this, that even in statutes like this, where the hours of labor are limited by law, it must be shown not only that the employee was laboring during the forbidden or excessive hours, but that his injuries in some proximate way resulted from this fact. Such is the decision of the supreme court of the United States in *St. Louis & Iron Mt. Ry.* v. *McWhirter,* 229 U. S. 265, [57 L. Ed. 1179, 33 Sup. Ct. Rep. 858], where the statute prohibited a railroad from permitting an employee to remain on duty for a longer period than sixteen consecutive hours. The complaint specifically alleged that the employee was injured after he had remained on duty for more than sixteen hours. The judgment in his favor was reversed by the supreme court of the United States because it was not sufficiently alleged nor shown that the violation of the statute was the proximate cause of the injury, that court saying: "We say this because although the act carefully provides punishment for a violation of its provisions, nowhere does it intimate that there was a purpose to subject the carrier who allowed its employees to work beyond the statutory time to liability for all accidents happening during such period without reference

to whether the accident was attributable to the act of working overtime. And we think that where no such liability is expressed in the statute, it cannot be supplied by implication. It requires no reasoning to demonstrate that the general rule is that where negligence is charged, to justify a recovery it must be shown that the alleged negligence was the proximate cause of the damage. The character of evidence necessary to prove such causation we need not point out, as it must depend upon the circumstances of each case. Conceding that a case could be presented where the mere proof of permitting work beyond the statutory time and the facts and circumstances connected with an accident might be of such a character as to justify not only the conclusion of negligence but also the inference of proximate cause, such concession can be of no avail here, since the instruction of the trial-court and the ruling affirming that instruction were based upon the theory that the mere act of negligence in permitting an employee to work beyond the statutory period created liability irrespective of the connection between the alleged negligence and the injury complained of." So here we say that conceivably a case might arise where merely by virtue of the fact that the minor was laboring between the hours of 10 P. M. and 5 A. M. (the natural hours of repose for youth) he sustained injury in some manner, as from sleepiness and fatigue. But no such cause of action is attempted here either to be pleaded or proven. The conclusion may not be avoided that the court's instructions upon the matter were seriously erroneous and gravely prejudicial, for the case bears no aspects of similarity to those cases where the employment of a minor in a given character of work being absolutely prohibited, the employer is held responsible in damages when he has put the minor to work at the prohibited task and injury results. In such cases, upon very familiar principles of justice, it is held that the employer, if injury shall result, shall not be allowed to raise the defense of contributory negligence. (*Lenahan v. Pittson Coal Min. Co.,* 218 Pa. St. 311, [120 Am. St. Rep. 885, 12 L. R. A. (N. S.) 461, 67 Atl. 642]; *Casperson v. Michaels,* 142 Ky. 314, [134 S. W. 200].) In these and all such cases injury resulted while the minor was performing the prohibited work. Here the only limitation upon his labor fixed by law were its hours, and he was injured at an hour

when it was legal for him to be at work, and for him to be at work in the kind of employment in which he was engaged.

The judgment and order appealed from are therefore reversed.

Melvin, J., and Lorigan, J., concurred.