## Southern Coal & Mining Company v. Frieda Hopp.

MINES AND MINERS ACT—*provision with respect to furnishing of props construed.* The purpose of the Mines and Miners Act in requiring the supplying of props, was to aid the miners in

protecting themselves against the dangers of a hazardous occupation, and not a measure for the greater security of other employees, and for a failure to comply with this duty, only those having use for the props and the right to demand them may complain of a wilful violation on the part of the mine manager to comply with such demand.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of St. Clair County; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the August term, 1906. Reversed with finding of facts. Opinion filed March 15, 1907.

KRAMER, KRAMER & CAMPBELL, for appellant.

KEEFE & SULLIVAN, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court of St. Clair county, in an action on the case by appellee against appellant, to recover under chapter 93, Rev. St., known as the Miners Act, for the death of her husband, caused, as it is alleged, by the appellant's wilful violation of the statute. The amended declaration upon which the suit was tried is in one count, the allegations of which are in substance: That on November 16, 1905, the defendant, a corporation, owned and operated a coal mine; that plaintiff's husband, Daniel Hopp, was employed as a shot-firer therein; that his duties were as defined by statute; that on the date aforesaid Joseph Peffer and Herman Obst were miners employed by defendant in said mine; that it was the duty of the defendant to supply props, cap-pieces and timber required by statute; that there was loose slate, rock or clod liable to fall from the roof in room 20, where plaintiff's husband was injured; that said Peffer and Obst while working on the day-shift in room 20, prior to the injury of Hopp, requested props and cap-pieces from the mine manager; that the mine manager "wilfully failed and omitted to deliver to said Peffer and Obst" the props and cap-pieces requested; that said Peffer and Obst could have propped up the overhanging rock if the manager had delivered the props and

cap-pieces requested; that while the said Hopp was at work in said room 20, in discharge of his duties as a shot-firer, a quantity of over-hanging slate or rock fell upon him causing injuries from which he died; and that the death of said Hopp "was occasioned by the wilful failure and neglect on the part of the said defendant to furnish and deliver to Joseph Peffer and Herman Obst, at said working place, props and cap-pieces of sufficient length and dimensions as required and in compliance with the statute in such case made and provided." By exceptions preserved and error duly assigned the verdict and judgment in this case are challenged as being contrary to the law and the evidence. The declaration is founded upon a wilful violation of the statute, the only charge being that appellant wilfully failed to supply the miners working in room 20, the place of injury, with props and cap-pieces, as required by section 16 (a) of the Miners Act. That section provides that "he (the mine manager) shall always provide a sufficient supply of props, caps and timber delivered on the miner's cars at the usual place when demanded, as nearly as possible, in suitable lengths and dimensions for the securing of the roof by the miners." The foregoing provision, expressed in quotation, is the whole duty imposed by the statute upon the mine operator, the appellant in this case, respecting the supplying of props or their use in securing the working place of the miners. Coupled with this provision, and as a part of it, it is made the duty of the miner, not the manager or operator, "to properly prop and secure *his* place with the materials [caps and *prop* timber] provided therefor." (The italics and brackets are ours.) That the purpose of the statute was to aid the miners in protecting themselves against the dangers of a hazardous occupation, and not a measure for the greater security of other employees is manifest, and for a failure to comply with this duty, only those having use for the props and the right to demand them may complain of a wilful failure, on the part of the manager, to comply with such demand. In thus construing the statute, evidence of the legislative intent, if that were needed, may be found in

the change in the law made by the Act of 1899, the present statute, which is a revision and amendment of the statute of 1879. By the earlier statute, the Act of 1879, the operator was required to supply the props and cap-pieces "so that the *workmen* may at all times be able to properly secure said workings for their own safety." "Workmen" is a comprehensive term and unless limited by construction made necessary by other provisions of the statute, might fairly have been said to include all the employees in the mine, whatever their particular service or occupation. No duty is imposed by the earlier statute upon the miners or workmen to use or place the props. By the present statute, the revision, the purpose is stated to be "for the securing the roof by the miners," and the duty is imposed upon the miner to "prop and secure his place." Whatever uncertainty there may have been as to the purpose of the Legislature under the old law, it is removed by clear and definite statement in the revision. It is the duty of shot-firers, under the Shot-firers Act of 1905, among other things, "to inspect and do all the firing of all blasts prepared in a practical, workmanlike manner," and they are not permitted "to do any blasting, exploding of blasts, or to do any firing whatever, until each and every miner and employee is out of the mine except the shot-firers." By this Act the Legislature has made it necessary for the mine operator to further classify his employees, and for the service heretofore required of the miner, that of shot-firer, it is now the duty of the operator to employ "a sufficient number of practical experienced men" whose duties are as above stated. The shot-firers are thus made a distinct class, experts it may be said, and no more to be classed as miners, within the meaning of section 16(a), than are all other underground workmen and employees. Certainly they were not in contemplation when the statute requiring props to be supplied was enacted, and we are unable to so construe that statute as to bring shot-firers within its purpose and protection.

Appellee refers to the purpose of the act as expressed in the title, "providing for the health and safety of the persons

employed therein," meaning the coal mine. It must, however, be borne in mind that to effect that purpose the Legislature has imposed certain duties upon the mine owner, the master, and certain other duties upon the employees, the servants, making it a misdemeanor and subjecting to like penalties all persons, whether master or servant, who neglect, refuse or fail "to do the things required to be done by any section, clause or provision of the act." To this is added the civil remedy, "for any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby," etc. Certain duties are imposed upon the owner or operator and for wilful omission to perform these duties he may be liable to an action for damage. The duties required of the mine manager, boss, superintendent or other superior servant in charge of the work are held to be the duties of the principal or master. The duty of the manager to supply props is plain and though the failure to perform that duty may have been due to the neglect or wilful disobedience of an employee to whom was delegated the duty, the master would nevertheless be liable. In this case, if the failure of appellant was due to the neglect or disobedience of one whose service it was to supply the props, it would be no defense. The statute does not require the mine owner to prop or secure the roof in the mine, and the security of others than the miner does not seem to have been in view by requiring the supply of props and timbers for that purpose. The liability, if any, must be to those for whose benefit the statute was enacted. The deceased was not a miner to whom the appellant owed any duty alleged in the declaration. The common law duty of the master to furnish a reasonably safe place to work is not involved in this case. It is not alleged that appellant failed in its common law duty to appellee, only that appellant wilfully failed in a statutory duty. The contention of appellee's counsel that the miners may be held to be the representatives of the master, the appellant, in the performance of a non-delegable duty, that is, that the master

through its servants, the miners, was required to set the
props so as to secure the roof of that place, is not tenable
under the declaration. The allegation is that appellant wil-
fully failed to deliver the props and cap-pieces to the miners,
not that it failed to properly set up the props and secure the
roof. Furthermore, we are of opinion that there is no evi-
dence tending to prove that the death of Hopp was the direct
result of appellant's failure to furnish the props, assuming
that the evidence establishes such failure. The testimony is
that within ten days or two weeks prior to the accident the
miners, Peffer and Obst, had asked for props for use in
that room, not at the particular place, and did not get them.
These witnesses are permitted to testify that if they had re-
ceived the props they would have propped up the clod which
fell upon Hopp. This testimony was not proper, and should
have been excluded, and without it there is no fact upon
which to found an inference or warrant a conclusion, that
if the props had been furnished they would have been used
and the accident prevented. It would be a mere guess, a
conjecture, which under well-recognized rules of evidence
may not be allowed to a witness or jury in determining the
direct or proximate cause of an injury. With views as above
expressed it will not be necessary to consider other errors
assigned and argued. The judgment of the Circuit Court
will be reversed and as there can be no recovery under the
facts alleged or the evidence in the record, the case will not
be remanded.

*Reversed, with finding of facts.*

We find as facts, to be incorporated in the judgment, that
the wilful act and omission charged in the declaration was
not the proximate cause of the injury complained of.