[Civ. No. 2904. First Appellate District, Division Two.—October 17, 1919.]

## LUIGI FIGONE et al., Appellants, v. GRISOSTOMO GUISTI, Respondent.

[1] NEGLIGENCE—VIOLATION OF STATUTE—WHEN ACTIONABLE NEGLIGENCE.—The violation of a statute or municipal ordinance is actionable negligence only as to a person for whose benefit or protection it was enacted, and where the plaintiff does not belong to the class that the law was designed to protect, the violation thereof will not avail to supply the element of duty owing.

[2] ID.—VIOLATION OF SECTION 273F, PENAL CODE—EMPLOYMENT OF MINOR SON IN SALOON—KILLING OF PATRON—LIABILITY OF FATHER. A father who violates the provisions of section 273f of the Penal Code by sending his son under the age of eighteen years into a saloon conducted by him to assist in the work there, violates a duty owing to his son, but not to third parties, and, therefore, such violation will not furnish a basis for a recovery in an action against such father by the parents of another boy who is killed by the minor son while thus employed.

[3] ID.—RESPONSIBILITY OF MASTER FOR TORTS OF SERVANT—ACCESS TO DANGEROUS INSTRUMENTALITY.—A master is responsible for the torts of his servant only when they are committed within the scope of the employment, and not when they arise out of a private quarrel having nothing to do with the master's business. The fact that the injury involved the use of a dangerous instrumentality, and that it was by reason of his employment that the servant was enabled to get possession thereof, does not alter the rule.

[4] ID.—TORT OF MINOR SON—LIABILITY OF FATHER.—A father is not liable for the tort of his minor son because he negligently placed him within reach of a loaded revolver which the son used to the injury of another.

[5] ID.—NONSUIT—WHEN JUSTIFIED.—A court is justified in granting defendant's motion for a nonsuit after the evidence on both sides has been heard in a case, where, if the motion had been denied and a verdict found for plaintiff, it would have been set aside as not supported by the evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Devoto, Richardson & Devoto for Appellants.

Harry I. Stafford and W. F. Stafford for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiffs from a judgment against them, entered upon the granting of defendant's motion for a nonsuit. The action was one brought by the parents of John Figone, a minor, to recover damages for the death of said John Figone, who was shot by the minor son of the defendant, while said minor son (George Guisti) was in the employ of the defendant. On March 14, 1917, the defendant owned and conducted a saloon and restaurant business at 218 Washington Street, San Francisco. He employed a regular barkeeper, and his son George assisted him in the restaurant and also at the bar when the

3. Parent's liability for tort of minor son where relation of master and servant exists, note, 10 L. R. A. (N. S.) 938.

4. Liability of parent for torts of minor child, notes, 11 Ann. Cas. 367; Ann. Cas. 1912A, 585.

rush of business made his help necessary. Defendant had a loaded revolver in the drawer under the bar counter, which was placed there as a protection against robbers. On March 14, 1917, John Figone entered the saloon. No one was present at this time except the two boys. What happened thereafter appears only from the testimony of George Guisti, who testified that the deceased threatened to "shanghai" him, and he, without being aware of the meaning of this language— and with a general impression that it meant something offensive—pulled out the revolver from the drawer and shot deceased.

It is clear that the action of the boy which caused the death of plaintiff's son was not within the course of the employment, but arose out of the personal quarrel of George Guisti with deceased. However, it is contended that the defendant, in employing in his saloon a boy who was a minor, violated the provisions of section 273f of the Penal Code; that under the decisions of our supreme court such violation of a penal statute constitutes negligence *per se,* and that the only other question remaining to be determined is whether or not such violation was the proximate cause of the injury sustained by the plaintiffs. Section 273f of the Penal Code provides: "Any person whether as parent, guardian, employer, or otherwise . . . who . . . shall send, direct, or cause to be sent or directed to any saloon, gambling-house, house of prostitution, or other immoral place, any minor under the age of eighteen, is guilty of a misdemeanor." Plainly, the defendant was violating the foregoing section when he sent his minor son into the saloon conducted by him to assist in any work there. It has been held by the supreme court of this state that where a defendant violates the express provisions of a statute, that violation itself, when proven, establishes his negligence *per se.* (*Williams* v. *Southern Pac. Co.,* 173 Cal. 525, 540, [160 Pac. 660]; *Siemers* v. *Eisen,* 54 Cal. 418; *McKune* v. *Santa Clara V. M. & L. Co.,* 110 Cal. 480, 485, [42 Pac. 980]; *Stein* v. *United Railroads,* 159 Cal. 368, 372, [113 Pac. 663]; *Driscoll* v. *Cable Ry. Co.,* 97 Cal. 553, 565, [33 Am. St. Rep. 203, 32 Pac. 591]; *Bresee* v. *Los Angeles Traction Co.,* 149 Cal. 131, 139, [5 L. R. A. (N. S.) 1059, 85 Pac. 152]; *Fenn* v. *Clark,* 11 Cal. App. 79, 81, [103 Pac. 944].) In all of the foregoing cases, however, and in all others which we have

been able to find, the violation of a statute has been held to establish negligence *per se* only in favor of one sought to be benefited by the violated statute. In other words, under the statute, a duty is owing to the persons coming within its protection, and as to such persons a violation thereof is negligence *per se*. The statute being considered here is plainly for the protection and benefit of the minor employee. It is a statute similar to those prohibiting the employment of children in certain dangerous occupations or for more than a stated number of hours each day. Such laws are enacted in the exercise of the police power for the protection and well-being of minors. (*Williams* v. *Southern Pac. Co.*, 173 Cal. 538, [160 Pac. 660].) "It is a well-established principle that the violation of a statutory duty is the foundation of an action in favor of such persons only as belong to the class intended by the legislature to be protected by such statute." (*Lepard* v. *Michigan Cent. R. Co.*, 166 Mich. 373, [40 L. R. A. (N. S.) 1105, 130 N. W. 668].) In the case of *Platt* v. *Southern Photo Material Co.*, 4 Ga. App. 159, 164, [60 S. E. 1068, 1070], the court said: "In determining whether the violation of a statute is negligence so as to support an alleged cause of action, the court is called upon to examine the law in respect to its objects; for if it appears that, notwithstanding the violation, none of the consequences contemplated and sought to be guarded against have ensued; or that the plaintiff is not the person or does not belong to the class to whose benefit or for whose protection the statute was enacted, the court cannot declare that there is a case of negligence *per se* as to that cause of action or that plaintiff."

[1] It may be said that there is practically no dissent from the proposition that the violation of a statute or municipal ordinance is actionable negligence only as to a person for whose benefit or protection it was enacted, and that where the plaintiff does not belong to the class that the law was designed to protect, it follows that it will not avail to supply the element of duty owing. (*Indiana etc. Coal Co.* v. *Neal*, 166 Ind. 458, [9 Ann. Cas. 424, and note, 77 N. E. 850].) "In an action based upon a neglect of duty, it is not enough for the plaintiff to show that the defendant neglected to perform a duty imposed by statute for the benefit of a third person, *and that he would not have been injured if the duty had been performed*; he must show that the duty was im-

43 Cal. App.—39

posed for his benefit and was one which the defendant owed to him for his protection.'' (*Kelly* v. *Henry Muhs Co.,* 71 N. J. L. 358, [59 Atl. 23], see, also, note to *Gilson* v. *Delaware Canal Co.,* 36 Am. St. Rep. 802, at p. 817; *Louisville & N. R. Co.* v. *Holland,* 164 Ala. 73, [137 Am. St. Rep. 25, 51 South. 365, 366]; *Southern Coal etc. Co.* v. *Hopp,* 133 Ill. App. 239; *Menut* v. *Boston etc. R. Co.,* 207 Mass. 12, [20 Ann. Cas. 1213, 30 L. R. A. (N. S.) 1196, 92 N. E. 1032]; *Racine* v. *Morris,* 201 N. Y. 240, [94 N. E. 864, 866]; *Everett* v. *Great Northern R. Co.,* 100 Minn. 309, [10 Ann. Cas. 294, 297, [9 L. R. A. (N. S.) 703, 111 N. W. 281].)

[2] It appears, therefore, that the violation of the statute was a violation of a duty owing to the boy employed, but was not a violation of any duty owing to the plaintiffs, and, therefore, does not furnish a basis for a recovery in this action. Hence, plaintiffs' rights must be examined in the light of very well-settled legal principles. There are two theories which are urged by appellants—one involves a liability by reason of the relationship of principal and agent; and the other a liability by reason of the relationship of father and son. [3] The rule is entirely beyond question that a master is responsible for the torts of his servant only when they are committed within the scope of the employment. The fact, emphasized by the appellants, that the injury to plaintiffs involved the use of a revolver which is a dangerous instrumentality, and that it was by reason of his employment that George Guisti was enabled to get possession of this weapon, does not alter the rule, in this state, at least. For it has been held in the case of *Stephenson* v. *Southern Pac. Co.,* 93 Cal. 558, [27 Am. St. Rep. 223, 15 L. R. A. 475, 29 Pac. 234], that where a servant of the railroad company perverts the appliances of the company to wanton and malicious purposes to the injury of others, the company is not liable. In that case the servant was in charge of a steam engine (which has also been held to be a dangerous instrumentality) and he willfully and wantonly backed it toward a street-car which was crossing the railroad tracks, with the intent to frighten the passengers in the street-car without colliding therewith, and, as a result, some of the passengers became frightened and jumped from the street-car and were injured. The evidence is clear in the present case, as we have stated before,

that the shooting was entirely outside of the employment. It arose out of a private quarrel, and had nothing to do with keeping order in the saloon or furthering the master's business. Upon the theory of responsibility growing out of the relation of master and servant, we think the nonsuit was proper.

[4] The second theory of appellants is that the father is liable for the tort of his son because he negligently placed him within reach of a loaded revolver which the son used to the injury of the plaintiffs. It is true there are several authorities in other states which might indicate that, in such states, such liability exists and that the question of negligence is one for the jury. We are able to find but one authority in this state upon the question involved here, but as that case stands unmodified and uncontradicted, we are bound by such authority and must decide this case in harmony therewith. That case is the case of *Hagerty* v. *Powers*, 66 Cal. 368, [56 Am. Rep. 101, 5 Pac. 622], in which the complaint alleged that the father negligently, carelessly, and willfully countenanced his child in having a loaded pistol, which pistol the boy so carelessly used as to shoot the infant child of the plaintiff. A demurrer was interposed and sustained. The supreme court upheld the action of the trial court, stating in the opinion that the rule therein announced was in accordance with the common law. In view of this case, the second theory of the appellants is also without merit.

In considering the admission made by the pleadings upon which appellants rely, we meet the first objection of appellants that the trial court erred in allowing an amendment to the answer after the nonsuit order had been made. We may concede this point to the appellants, and we shall discuss the pleadings as they were at the time of the granting of the nonsuit and before the amendment to the answer. They then contained an admission that on an occasion previous to the shooting, out of which this action arose, the boy, George Guisti, had drawn a revolver on a person having occasion to enter the saloon and that such fact was known to the father— the defendant. We call attention to the fact that the allegation of the amended complaint is that George Guisti drew the revolver in November *without cause or provocation* upon a person having occasion to enter the saloon. The answer, while admitting the drawing of the revolver at that time,

denies that it was drawn without cause or provocation, and alleges that it was drawn with just cause and provocation, and denies that the father was aware that the boy would draw the revolver or discharge the same willfully, carelessly, and unnecessarily during his employment. These controverted allegations of the amended complaint are unsustained by the evidence. The only evidence offered upon the question of whether or not the defendant had reason to believe the boy would ''draw the revolver or discharge the same willfully, carelessly, and unnecessarily during his employment,'' was the testimony of Robert Gotelli, as follows: "Q. Did you see any pistol in George Guisti's hand some time before that [the time of the killing]? A. Yes. Q. How long before? A. I could not tell you. About four or five months. Q. Where did you see the pistol in his hands, in the saloon? A. He was right there. He was only fooling around with another fellow. Q. Did you see the pistol in his hands? Where did he get that pistol? A. I could not tell you. I was eating lunch. I just spotted it, that is all, and I went out. I did not stay there very much. . . . Q. Did you see where George Guisti got the pistol from? A. I saw him when he was fooling around there but I could not tell you where he got it from. Q. Where did he have the pistol? A. He had it in his hand. Q. I wish you would state how he held the pistol. A. He held it in his hand and *showed it to the other fellow.* I just spotted it there and I went out. I know they are always fooling around there. *I don't know where he put it or whether he pointed it at the other fellow.* Q. What did the son say when he had the pistol in his hand? A. He said, 'Look out,' that is all I heard and I went out. Q. Is that all he said, 'Look out'? A. Yes. Q. Where was Mr. Guisti at that time? Was he in the restaurant or in the saloon? A. He was right there serving the people, he was over there by the free lunch counter, because I never saw him alone in there.''

There is nothing in this evidence to show that young Guisti showed any inclination to injure anyone. We do not think the incident was such that a reasonable mind could say that because of it the employer had reason to believe the boy a dangerous person to have around the saloon or that the employer was negligent thereafter, because of such incident, in retaining the boy in his employ. The details of the incident

are indefinite and incomplete, but so far as the testimony goes, there is no evidence of any malice or of any danger to anyone. The witness stated that young Guisti showed the pistol "to the other fellow"; that he warned him at the same time to "Look out," and the witness does not know whether or not the pistol was pointed at anyone. [5] We are of the opinion that if the court had allowed the case to go to the jury upon the admission and evidence herein discussed, and the jury had returned a verdict for the plaintiffs, the court would have been compelled to have set the verdict aside as unsustained by the evidence. The rule is expressed in the case of *Geary* v. *Simmons*, 39 Cal. 224, that a court is justified in granting defendant's motion for nonsuit after the evidence on both sides has been heard in a case, where, if the motion had been denied and a verdict found for plaintiff it would have been set aside as not supported by the evidence.

We are, therefore, of the opinion that upon every theory of the case, the action of the trial court was proper.

The judgment is affirmed.

Nourse, J., concurred.

BRITTAIN, J., Dissenting.—It is with regret that for the first time since the organization of this division of the court I am compelled to dissent from the opinion and conclusions of my associates in regard to the controlling facts of the case and the applicability to them of the rules of law which would be unquestionable in a case to which they might properly apply.

The appeal is from a judgment of nonsuit in an action for damages for death by wrongful act. The plaintiffs and appellants are the parents of John Figone, twenty years and five months old, who was killed by an employee of the defendant in the defendant's saloon, of which the employee was in sole charge. The shooting was done with a revolver which the defendant kept within ready reach back of his bar, as the defendant stated, so that if anyone tried to hold him up he would be ready for him. At the time of the shooting the defendant's employee, who was his own son, was seventeen years old, and had been in the defendant's employ some fifteen or sixteen months. It was a place where patrons dropped in to get a drink, and on being served with the drink, if they de-

sired, they were served with a free lunch, the same as in any other saloon. There was a separate dining-room. The boy who did the shooting was sometimes engaged in serving meals in the dining-room, sometimes in serving free lunch and making change in the saloon, and sometimes in serving drinks over the bar in the saloon. Section 273f of the Penal Code provides that "Any person, whether as parent, . . . employer or otherwise, . . . who as employer or otherwise, shall send, direct, or cause to be sent or directed to any saloon, . . . or other immoral place, any minor under the age of eighteen, is guilty of a misdemeanor." Figone was killed on March 14, 1917. In November, 1916, the boy who shot Figone drew the same revolver upon another person who entered the saloon for the purpose of patronizing it. A witness to that occurrence testified that at the time the boys were fooling, and that the defendant was present. In his answer the defendant admitted the revolver was drawn upon a patron of the saloon at that time, and asserted that it was for just cause and because of provocation. No facts were stated in the answer to support those legal conclusions. They amounted merely to an admission on the part of the employer that he knew his minor employee had drawn the deadly weapon, which he provided and kept in his place of business, upon a patron of his saloon, and that he, the employer, approved the act. The answer containing the admissions was regularly admitted in evidence without objection on the part of the defendant. In the saloon, at the end of the bar, was a small space, separated from the bar by curtains, to which patrons of the saloon retired for private conversation. This space was called "the office" in a statement made by the shooter to the police after his arrest. The only evidence of what occurred at the time of the killing was in this self-serving statement of young Guisti. He said: "I was washing glasses and I did not notice John Figone come into the office. And I was all finished washing glasses, I noticed him in the office. I said: 'Hello, John.' I said: 'How are you?' and he said some Sunday he was going to take me to San Jose and shanghai me. I did not know what the word means. I thought it had a vulgar meaning. I said: 'Oh, no, you are not.' He said: 'Oh, yes.' It was then I jumped behind the counter and took the revolver and held it pointed at him, and I said: 'You going to stop now?' And all of a sudden I seen

him laying on the floor hollering for help. I am not sure I pulled the trigger, but I heard the gun explode. At the time I pointed the revolver he was halfway up in his chair, and then I seen him on the floor crying for help." He further stated what he thought was meant by "shanghai," but it is impossible that he could have believed that Figone at that time and in that public place either could or would attempt the act which Guisti described.

The foregoing facts were before the court when the motion for nonsuit was made. They are stated most strongly for the plaintiffs. "Upon a motion for nonsuit, the evidence, and every inference that may be fairly drawn from it, must be viewed in the light most favorable to the plaintiff's claim. (*Rauer* v. *Hertweck,* 175 Cal. 280, [165 Pac. 948] ; *Goldstone* v. *Merchants'* etc. *Co.,* 123 Cal. 625, [56 Pac. 776] ; *Hanley* v. *California etc. Co.,* 127 Cal. 232, [47 L. R. A. 597, 59 Pac. 577].)

It has been held in this state that a father as such is not liable for the shooting of another child by his minor son, even though it was alleged that the father "willfully, carelessly, and negligently suffered, permitted, countenanced, and allowed his son to have possession of a loaded pistol." (*Hagerty* v. *Powers,* 66 Cal. 368, [56 Am. Rep. 101, 5 Pac. 622].) In the present case, therefore, there is no question concerning the liability of the defendant merely as the father of the boy who did the shooting. The defendant's liability, if he was negligent, resulted from his relationship with the boy as employer.

In support of the judgment it is strenuously contended that the shooting of Figone was not in the course of the employment of Guisti. The familiar rule that an employer is not liable for the tortious act of his employee done outside of the course of employment is invoked, and the long line of cases announcing this salutary rule is cited. The rule has well-defined limitations. The law charges every man with responsibilities he may not evade on the ground that he is an employer. If, for instance, he does not act with the care which an ordinarily prudent man exercises in the selection of his employees, and injury results thereby, the master may not evade responsibility under the "course of employment" rule. The defendant left in sole charge of his saloon his seventeen year old employee, and as a part of the equipment

of the saloon and within easy reach was a revolver, which the master repeatedly stated he kept so that if anyone attempted to hold him up he would be ready for him. "Every person who acts through a representative is under obligation to discover the skill, experience and diligence of his agent, and if he selects one who is incompetent to perform the duties of the service, he will be accountable to any person who may have sustained damage by such incompetency. Indeed proof of known incompetence has been held by excellent authority to be a foundation for the allowance of punitive damages." This statement of the law is supported by numerous authorities. (18 R. C. L. 791.)

It is argued for the appellants that the employment of the boy in violation of section 273f of the Penal Code constituted negligence *per se*. Generally, the violation of a penal statute which shows on its face that it was enacted for the protection of a particular class may not be invoked as showing negligence as a matter of law, except by one within the protected class. This rule also is limited. In a case frequently cited as a leading one upon the rule, it was expressly recognized that a co-employee of a child improperly employed was within the protection of the child labor law. In that case it was further fully shown that there was no causal connection between the violation of the statute and the injury of which complaint was made. It does not support the contention that the violation of such a penal statute closely connected with an injury to a third person cannot be relied upon in an action for negligence against the master under the rule requiring him to exercise prudence in the selection of competent employees. (*Platt* v. *Southern Photo etc. Co.*, 4 Ga. App. 159, [60 S. E. 1068].) Section 273f of the Penal Code might properly be considered as one passed for the benefit of the entire community, and so considered its violation would amount to negligence *per se*. It is not necessary so to determine in this case. If it be considered as one primarily passed for the protection of young Guisti, its evident purpose was to protect him and other minors from the evil effects of being sent to a saloon or other immoral place. As a fact only it was an expression, on the part of the people of the state as ordinarily prudent men of their views concerning the competency of minors employed in a saloon. For fifteen or sixteen months the employer had daily imparted to his youthful em-

ployee the lesson that the law defining crimes was not worthy of consideration. Not alone did the morals of young Guisti suffer because he was daily sent to the saloon by his employer, but they were further sapped by the repeated lessons of the employer that the prohibitions of the criminal law were without force.

Again, the "course of employment" rule does not apply where, even though the employer may have exercised ordinary prudence in the selection of his servants, knowledge is brought home to him of habits of wrongdoing, or infirmities of temper or lack or discretion, in the peformance of the duties placed upon them by the employer. One illustration of this rule is that "if a railroad company, for instance, knowingly and wantonly employs a drunken engineer, or switchman, or retains one after knowledge of his habits is clearly brought home to the company . . . and injury occurs by reason of such habits, the company may and ought to be amenable to the severest rule of damages." (*Cleghorn* v. *New York Cent. etc. R. Co.*, 56 N. Y. 44, [15 Am. Rep. 375].) Recognizing the justice of this principle, it has sometimes been held that in permitting employees to indulge in vicious habits of work, the master is guilty of maintaining a nuisance. (*Hogle* v. *Franklin etc. Co.*, 199 N. Y. 388, [32 L. R. A. (N. S.) 1038, 92 N. E. 794]; *Fletcher* v. *Baltimore etc. Co.*, 168 U. S. 135, [42 L. Ed. 411, 18 Sup. Ct. Rep. 35, see, also, Rose's U. S. Notes]; *Swinnarton* v. *Le Boutillier*, 149 N. Y. 752, [43 N. E. 990].) The reasoning on which these cases depend would apply equally to a case where a motorman, for instance, was retained after the master knew that on one occasion he had fallen in a fit while operating an electric car, or where a master retained a boy in charge of a loaded revolver, knowing he had on one occasion committed an unwarranted assault with it. While the fact of negligence in the final act may not be shown by proof of a similar act of negligence on another occasion, evidence of such an act is proper to show the employer's knowledge of the employee's unfitness for service. (18 R. C. L. 791.) In the present case the master knew of the wrongful use of the revolver by his minor employee before the shooting in question. He retained him as his employee, and on the day of the shooting left him in charge of the same instrumentality. While it is argued that the shooting of Figone was not in the course

of his employment, the master approved the first wrongful use of the instrumentality by his employee. The question of fact was, therefore, presented as to whether or not a reasonably prudent man would have left the seventeen year old boy in sole charge of the saloon, of which the revolver was a part of the equipment.

It is argued that every man may own firearms and there is nothing unlawful in leaving them loaded. This is true, but "firearms are extraordinarily dangerous. A person who handles such a weapon is bound to use extraordinary care to prevent injury to others and is held to strict accountability for want of such care." (*Rudd* v. *Byrnes*, 156 Cal. 640, [20 Ann. Cas. 124, 26 L. R. A. (N. S.) 134, 105 Pac. 959].) Might reasonable men differ in regard to the extraordinary care, or the lack of it, exercised by the master in leaving this loaded revolver within such handy reach of his minor empoyee, particularly when he knew of its former misuse?

The "scope of employment" rule is also limited by the impossibility of the master to avoid the consequences of an employee's use of dangerous agencies placed in his control by the master. In those cases, "responsibility is made to depend upon the fact that the wrong was made possible by the position of the employee and the instrumentalities furnished by the employer." (18 R. C. L. 787, 788.) "All courts agree that when the employer places in the hands and under the control of his employee an instrumentality of exceptionally dangerous character, he is bound to take exceptional precautions to prevent injury being done thereby. . . . According to the expressions of some opinions if the owner of an exceptionally dangerous agency places it in the hands of an employee, the negligence of the latter, either in failing properly to guard it, or in improperly using it, is the negligence of the owner, for which he is responsible. The employer is said to be answerable for the exercise of the employee's judgment in the use of the instrumentality." (18 R. C. L. 789.) It is argued that this rule does not exist in this state by reason of the decision in a case where a locomotive engineer negligently backed his locomotive toward a street-car on which the plaintiff was a passenger, and from which she jumped, believing herself to be in imminent danger of injury from an anticipated collision between the locomotive and the car. (*Stephenson* v. *Southern Pacific Co.*, 93 Cal. 558,

[27 Am. St. Rep. 223, 15 L. R. A. 475, 29 Pac. 234].)   All
that was decided in that case was that under all the facts
there under consideration the rule of nonliability of the
master for the tortious act of its servant outside of the line
of duty would be applied.   Even though the opinion in that
case might be construed as a definitive holding that under
no circumstances would the wanton misuse of the locomotive
by the engineer render the employer liable, that decision
never has been, and ought not to be, construed as holding
that in no case may the employer be held liable for the mis-
use of a deadly agency with which he has intrusted his em-
ployee.   The text above quoted from Ruling Case Law is
based upon the citation of authorities from Arkansas,
Georgia, Illinois, Indiana, Iowa, Mississippi, New York, Ohio,
Pennsylvania, Tennessee, Washington, and Wisconsin.

This court ought not decide as a matter of law that in
the particular case the defendant was guilty of negligence.
Neither upon the facts before the trial court could it decide
that the master was not guilty of negligence.   Giving the
Stephenson case full weight as applying to all the facts in
evidence there, and considering the rule which the writer of
the article in Ruling Case Law said all courts recognized,
the sole question presented on the motion for nonsuit was
whether, upon consideration of all the facts in this case, the
employment of the minor in violation of the penal statute,
the placing him in charge of the extraordinarily dangerous
instrument, the approval of his former misuse of it by the
master, the retention of him in the same capacity and alone
in charge of the weapon, might reasonable men honestly
reach different conclusions as to whether or not the defend-
ant had exercised that degree of care which ordinarily pru-
dent men would have exercised.   If different conclusions upon
these facts might be reached by reasonable men, then under
the elementary rules stated at the outset of this opinion, non-
suit should have been denied.   The plaintiffs had the constitu-
tional right in such a case and upon such facts to have the
question of negligence as a matter of fact determined by a
jury.   "It is elementary that a motion for nonsuit is not
to be granted where there is any substantial evidence which,
with the aid of all legitimate inferences favorable to the
plaintiff, would support a verdict or finding that the material
allegations of the complaint are true." (*Burr* v. *United*

*R. R. Co.,* 163 Cal. 665, [126 Pac. 873].) "Equally well settled is the rule that negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be drawn from the evidence." (*Burr* v. *United R. R. Co., supra; Wahlgren* v. *Market St. R. Co.,* 132 Cal. 656, [62 Pac. 308, 64 Pac. 993]; *Kimic* v. *San Jose etc. Co.,* 136 Cal. 379, [104 Pac. 986].) "It is only when the evidence is such that but one conclusion in respect to negligence could be reached by a reasonable and impartial man that the question becomes one of law for the court." (*Burr* v. *United R. R. Co.,* 163 Cal. 665, 666, [126 Pac. 873, 874].) "Negligence is not absolute or intrinsic, but is always relative to some circumstance of time, place, or person and is to be determined by reference to the situation and knowledge of the parties, and all the attendant circumstances, and what would be extreme care under one condition of knowledge and one set of circumstances would be gross negligence with different knowledge and in changed circumstances." (*Smith* v. *Whittier,* 95 Cal. 279, [30 Pac. 529].) In this case, under all the circumstances the granting of the motion for nonsuit ought not be upheld.

It is argued that even though the employer were negligent, unless his negligence was the proximate cause of the injury, the nonsuit should have been granted. The question of proximate cause in such a case is also one of fact which should have been submitted to the jury. An injury that is the natural and probable consequence of an act of negligence is actionable, and such act is the proximate cause of the injury. It need not be the sole cause. If the acts constitute a continuous succession of events, so connected that they become a natural whole, liability will attach. There may be a succession of intermediate acts, each produced by the one preceding and producing the one following. (*Milwaukee etc. Ry. Co.* v. *Kellogg,* 94 U. S. 469, [24 L. Ed. 256]; *Mack* v. *South Bound R. R. Co.,* 52 S. C. 323, [68 Am. St. Rep. 913, 40 L. R. A. 679, 29 S. E. 905]; *Atkinson* v. *Goodrich etc. Co.,* 60 Wis. 141, [50 Am. Rep. 352, 18 N. W. 764]; *Purcell* v. *St. Paul R. Co.,* 48 Minn. 134, [16 L. R. A. 203, 50 N. W. 1034]; *Bosqui* v. *Sutro R. Co.,* 131 Cal. 397, [63 Pac. 682].) Courts have invariably declared their inability exactly to define the meaning of the words "proximate cause." The supreme

court of the United States has said that each case must be tested "largely on special facts belonging to it, and often on the very nicest discriminations." (*Mutual Ins. Co.* v. *Tweed,* 7 Wall. 52, [19 L. Ed. 65, see, also, Rose's U. S. Notes].) In regard to lack of that extraordinary care which the supreme court of this state has held to be necessary in the use of firearms, in a comparatively recent English case it was held the defendant was guilty of actionable negligence where the defendant left a gun loaded, at full cock, standing inside of a fence on his lands beside a gap from which a private path led over the defendant's lands from the public road to his house, and the defendant's son, aged between fifteen and sixteen, coming from the road, through the gap on his way home, found the gun, whereupon he returned with it to the public road, and not knowing it was loaded, pointed it, in play, at the plaintiff, who was on the road, and who was injured by its discharge. (*Sullivan* v. *Creed,* 2 English Ruling Cases, 131.) In another case, the defendant, being possessed of a loaded gun, sent his servant, a young girl, for it, with instructions to take the priming out, which was accordingly done, and damage occurred to the plaintiff's son in consequence of the careless presenting of the gun at him and drawing the trigger, when the gun went off. The court held the defendant was liable in an action on the case. (*Dixon* v. *Bell,* 19 English Ruling Cases, 26.) The rule in regard to proximate cause is that if but for the negligence of the defendant, in a continuous chain of circumstances, whether coupled with acts of third persons or not, the injury would not have occurred, the defendant's negligence is a proximate cause of the injury. In the present case, upon the evidence of the plaintiffs, considered most strongly for them, but for the defendant's negligence young Figone would not have been killed by the defendant's reckless employee, and the plaintiffs would not have been deprived of the support of their son.

After the nonsuit was granted, upon motion the defendant was permited to file an amendment to his answer in which, in place of the admission of the defendant of the drawing of the gun upon a patron of the saloon in 1916 and his attempted justification of the act, the defendant averred that he had no sufficient information or belief on the subject to permit him to answer the allegations in that regard, and he

denied that the revolver was so drawn by his employee, and further denied that he was ever aware that his employee drew his revolver at any time upon any person. While amendments should be liberally allowed, that liberality should only be exercised in furtherance of justice. (Code Civ. Proc., sec. 473.) It has been declared to be a rule that a plaintiff will not be permitted on the trial to deny a fact admitted in the answer. (Bliss on Code Pleading, sec. 430; *Bank of Woodland* v. *Herron,* 122 Cal. 107, [54 Pac. 537]; *Hansen* v. *Stinehoff,* 139 Cal. 169, [72 Pac. 913]; *Rudd* v. *Byrnes,* 156 Cal. 639, [20 Ann. Cas. 124, 26 L. R. A. (N. S.) 134, 105 Pac. 957].) "Speaking generally, it may be said that the test as to whether or not the court has abused its discretion will depend upon whether the amendment is a permissible amendment which will perfect a cause of action otherwise imperfectly pleaded. In this case the court had tried the action, had taken all the evidence of all the parties, from which evidence it was satisfied that plaintiffs were not in possession of the land and could not prove such possession upon a new trial without gross stultification of the evidence which they had formerly given." (*Norton* v. *Bassett,* 158 Cal. 427, [111 Pac. 253].) In the present case, in view of the admission of the defendant and his attempted justification of the drawing of the weapon by his employee, and in view of the evidence of the witness who testified that the defendant was present upon that occasion, the denial of information concerning the fact of drawing the revolver and the denial of the fact amounted to such a stultification that the order permitting the amendment cannot be sustained. (*Spanagel* v. *Reay,* 47 Cal. 608.) The court could not by the order permitting the amendment to be filed nullify the evidence before the court on the motion for nonsuit. On retrial of the case, the defendant ought not be permitted to introduce evidence or put the plaintiffs to the proof of facts upon a matter already admitted of record in the case.

The judgment should be reversed and the amended answer stricken from the files.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 15, 1919.

Angellotti, C. J., Shaw, J., Wilbur, J., and Olney, J., concurred.