[Civ. No. 6223. First Appellate District, Division One.—March 6, 1928.]

MYRTLE ROSANDER, Respondent, v. MARKET STREET RAILWAY CO. (a Corporation), Defendants; GOLDEN GATE BUILDING MATERIALS CO. (a Corporation) et al., Appellants.

Cooley & Gallagher and Cooley, Crowley & Gallagher for Appellants.

R. P. Wisecarver and Redman & Alexander for Respondent.

PARKER, J., *pro tem.*—This is the same action under consideration in *Rosander* v. *Market Street Railway Co. et al., ante,* p. 710 [265 Pac. 536]. As disclosed in the opinion rendered, the judgment was against all of the defendants, and separate appeals were taken. This is the appeal of all the defendants other than Market Street Railway Company, a corporation.

The trial of the action was a three-party controversy. The plaintiff, admittedly without negligence, charged her in-

juries to the joint and concurring negligence of all of the defendants. The defendants comprised two alleged wrongdoers, the Railway Company and the remaining defendants, commonly referred to as the truck people. These appellants are the truck people.

The appeal presents two general claims. The first contention involves the liability of any of the defendants; the second contention, admitting the liability of the truck owners, is that defendant Golden Gate Building Materials Co. (a corporation), was not the owner of the truck nor the employer of the driver, and that there was no privity of contract or other relationship sufficiently shown to fasten any liability on said corporation.

As the facts are few they may be repeated here. Plaintiff, on the morning of the day in interest, was leaving her home near Scott and Page Streets, in the city of San Francisco, at about 8:30 A. M. Almost immediately upon reaching the sidewalk, she heard a crash and saw in the street a collision between a street-car and a large truck, and almost in the instant she saw the truck moving toward her. She fled for safety to the house, and the truck overtook her, knocking her down right at the threshold and inflicting her injuries. It was a large five-ton truck heavily loaded and being driven by one Palamountain.

The case was tried upon the theory that the street-car in question was traveling at a high and excessive rate of speed down Page Street, and that the truck, at an excessive and unlawful rate of speed, was coming along on Scott Street; that, due to the unlawful speed of both the street-car and the truck, a collision occurred at the intersection. We deem this statement of facts will serve the present discussion.

Appellants raise two points that may be disposed of at the outset. ■ First, it is contended that the evidence is insufficient to support the verdict and judgment against these appellants. This is the language of appellants' brief: "We will set forth the material portions of each witness' testimony, with the exception of the witnesses offered by the railroad company. If the jury accepted the railroad's witnesses it could not have rendered a verdict against the railroad. If the respondent relies on the testimony of the railroad company's witnesses, of course she must concede

that they were truthful, and if so, no verdict should have been rendered against the railroad company. She cannot adopt the position that their testimony about the operation of the car was untrue, but that on the other hand the testimony about the operation of the truck was true.''

This is about all that need be said on the subject of the sufficiency of the evidence. The argument is not strong enough to call forth a reply thereto. We have, however, examined the entire record and find sufficient evidence to support the verdict.

Appellants also argue that the damages allowed were excessive to the extent of appearing to have been given under the influence of passion and prejudice.

In *Mohn* v. *Tingley*, 191 Cal. 471 [217 Pac. 733], the court again approves the rule as laid down in *Hale* v. *San Bernardino Valley T. Co.*, 156 Cal. 713 [106 Pac. 83], as follows: ''The amount of damages is committed first to the sound discretion of the jury and next to the discretion of the judge of the trial court who, in ruling upon the motion for a new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just. Upon appeal the decision of the trial court and the jury on the subject cannot be set aside unless the verdict is 'so plainly and outrageously excessive as to suggest at the first blush passion or prejudice or corruption on the part of the jury.' ''

From a review of the record before us we do not feel that the damages are so grossly excessive as to warrant the conclusion that passion or prejudice entered as an element in the jury's determination. The plaintiff, a young married woman, was run down by a loaded truck of a total weight of 23,000 pounds. The resultant injuries were what would be expected save that she was not killed outright. We deem it unnecessary to catalog in detail all of the injuries sustained by her. That she was most seriously injured admits of no question. The injuries are of a permanent character to the extent that, whatever slight improvement may follow, she will remain an invalid. As the result of the accident she has been completely unsexed and the capacity to bear children has been destroyed. All of her main organs now function without nerve supply and in an inefficient manner. It would be and is a delicate question, and to here enumerate each separate disarrangement would be

to inflict needless pain upon plaintiff and embarrassment to the record, with no cause sufficiently or at all warranting such course. The injury involved all of the sex organs and the organs co-ordinating therewith. Natural elimination is impossible, and even purgative treatment is inefficient, resulting in the necessity of artificial aids not wholly effective to prevent systemic poisoning with its usual discomforts.

Appellants' other grounds of appeal are alleged errors in the court's action in giving and refusing certain instructions to the jury and in the admission and rejection of evidence.

■ On the question of the right of way, the court instructed the jury as follows: "As said by our Supreme Court, the street-car cannot go upon the street except upon its rails, and hence it has the better right to that space, to which others must yield when necessary. It is the settled law of this state that the street-car has, and from the necessity of the case must have, a right of way upon that portion of the street upon which alone it can travel and which it cannot leave paramount to that of persons and ordinary vehicles. This superior right is not exclusive, and does not prevent others from driving on or passing along or across its tracks at any time or place when by so doing it will not materially interfere with the progress of its cars."

Appellants concede the correctness of the instruction as far as travel between blocks may be involved. It is urged, however, that at intersections the rule has no application. Much authority is cited in support of this contention. We do not feel the necessity of analyzing and distinguishing all of the cases upon the subject. The street-car has no opportunity of leaving the tracks while passing through an intersection, and at least to that extent the reason for the general rule holds good at crossings. We decline to go further into the question for the reason that whatever conclusion we might reach on the alleged error in the instruction, it could have no bearing on the determination of this appeal. It has no relation to the negligence of the truck driver, and, as the facts of the case show and the finding of the jury is that the truck in question was driving to and through the said intersection at a speed prohibited and in itself negligent, the fact that the railway company may have been likewise negligent in no way excuses the truck driver. In the face of

substantial and convincing evidence of the negligence of both the street-car company and the driver of the truck, it becomes unimportant to determine which of the two was the more negligent. If we were to hold the instruction erroneous, and go further and hold that the right of way at the intersection here being considered was with the truck, there would still be left in the case the negligence of the driver of the truck sufficient to sustain the verdict.

Appellants content themselves with pointing out the alleged unsoundness of the instruction but make no reference to any harm or prejudice resulting to them therefrom. The jury were further instructed upon the same subject, and were told that neither the street-car nor the truck had any exclusive right to the use of any part of the street, but that the rights of each were and are reciprocal to the extent in the questioned instruction stated; and the jury were further instructed that, in operating the street-car along the street in question at the time and place of the accident, it was the duty of the motorman of the street-car to use ordinary care not to collide with any automobile on the highway. Taking the instructions together, we think the jury was fully and fairly instructed. (*Bailey* v. *Market St. Ry. Co.,* 110 Cal. 320 [42 Pac. 914]; *Arnold* v. *San Francisco etc. Ry. Co.,* 175 Cal. 1 [164 Pac. 798]; *Armock* v. *United Railroads of San Francisco,* 56 Cal. App. 160 [204 Pac. 856]; *Haber* v. *Pacific Electric R. Co.,* 78 Cal. App. 617 [248 Pac. 741].)

In Cal. Jur., vol. 23, p. 881, it is stated: "The duties of a motorman on approaching an intersecting street and of a pedestrian or driver of a vehicle about to cross the tracks are reciprocal, except in the particular that, because the car is confined to its tracks, vehicles and foot passengers must give way to its clear passage."

The court instructed the jury as follows: "I further charge you that said Motor Vehicle Act also provided, at the time of the happening of the accident, that it was unlawful for the driver of a vehicle equipped with other than pneumatic tires to drive such vehicle upon a public highway at a speed greater than or in excess of 10 miles an hour where the gross weight of the vehicle and its load was over 22,000 pounds."

"Any violation of these provisions of the State Motor Vehicle Act is *prima facie* evidence of negligence unless excused by the circumstances shown, and you have a right to take into consideration these provisions of that Act in determining whether or not the driver of the truck and the defendants (naming the truck people) were guilty of negligence."

The contention of appellants is that, conceding the provisions of the Motor Vehicle Act (Stats. 1923, p. 517, as amended), to be as stated, these provisions were enacted for the protection of the roadbed itself and for no other purpose.

Adopting appellants' language, the contention is thus given: "The provision of the Motor Vehicle Act with respect of speed at which vehicles equipped with solid tires may be operated were not enacted with the idea of protecting other traffic, either vehicular or pedestrian. These provisions are solely for the protection of the roadbed."

Appellants then cite sufficient authority to the proposition that where a violation of statute is not a violation of any duty owed plaintiff she cannot recover. (*Corbett* v. *Spanos*, 37 Cal. App. 204 [173 Pac. 769]; *Figone* v. *Guisti*, 43 Cal. App. 609 [185 Pac. 694].) There is nothing in the Motor Vehicle Act to suggest that these regulations of speed according to weight and tire equipment were intended solely for the protection of the roadbed. We cannot take judicial knowledge of the fact, if it be a fact, that a truck with solid tire wheels and loaded to 22,000 lbs. will be more harmful to the roadbed than a truck of equal load with pneumatic tires. We have no evidence on the subject. If we are to hold that these so-called "weight and equipment" speed limits were enacted solely as a protection to the roadbed, we would then be left with no regulation governing speed of heavy loaded trucks as applicable to general traffic except such regulations as govern the ordinary touring car. Obviously this can hardly be the intent of the lawmakers. At the time of the accident in question here, the speed limits for all cars appeared under title IX of the Motor Vehicle Act, sections 112–145, inclusive. Title VIII, sections 83 to 111, inclusive, deals with the use of the highway and gross weights of trucks and size and character of tires. When the language of a statute is plain and unambiguous, courts are not called upon to determine the wisdom

of the enactment. It seems to us beyond question that there is a very material difference, aside from roadbed protection, in the management and control of a touring automobile and a cushion-tired truck of a gross weight of 22,000 lbs. We know it to be true that a truck weighing with load 23,000 lbs. is, when control is lost, an instrumentality of far greater danger than an ordinary automobile weighing four or five thousand pounds. Laws are framed and enacted on the theory of protection against possible emergency as well as for other general purposes. When the legislature declared that trucks with solid tires loaded to a gross of 22,000 lbs. should not travel in excess of 10 miles per hour, it is not improbable that it might have intended to render impossible just such an accident as this. If this truck had been traveling 10 miles per hour and had been struck as it was by a street-car, it is less likely that it would have done the damage which we have here. We know, as a matter of general knowledge, that speed plus weight equals momentum, and as the factors increase the result is proportionately greater. The legislature may be presumed to have foreseen the inevitable result of permitting large loaded trucks of a gross weight exceeding 22,000 lbs. to run along the streets and highways with no regulation as to speed other than those applying to the general traffic. These trucks, aside from being heavy, are likewise usually of large dimensions, difficult of control, and occupy a great portion of the highway. If they were permitted the general speed rate nothing but congestion would follow, in as much as passing around them would entail great difficulty and danger. Legislation affecting automobile transportation is no longer in an experimental stage, and if it was the intention of the law-makers to regulate speed of heavy vehicles simply as a matter of protecting the roadbed it would have been a simple thing for them to so indicate. The speed of heavy loaded trucks is further regulated according to the wheel equipment, that is to say, one rate of speed is permitted for those equipped with pneumatic tires and another for those equipped with solid tires. Appellants assume it to be a well-known fact that the heavier the car the greater the damage resulting to the highway. While this may be granted, it does not negative the idea that there is a greater danger to the general traffic in the operation of these heavy trucks. We conclude that the

purpose of these enactments was not solely for the protection of the roadbed. The state has taken to itself the matter of regulating the operation of automobiles on the public highways. By its mandate the speed of every kind of motor vehicle is fixed or regulated. The Motor Vehicle Act is primarily enacted for public safety, and its many provisions looking toward that end so indicate. To leave trucks of solid tire equipment and of a gross weight exceeding 22,000 lbs. with the same speed regulations as a touring-car would frustrate the attainment of the end sought. And, therefore, when the speed of such vehicles has been regulated it is not for the courts, in the absence of evidence thereon, to arbitrarily hold the regulation unreasonable as a speed limit but valid only as a road measure. We are of the opinion that the particular provision under consideration is a part of the general scheme to promote the safety of the public, although it may include some notion of the necessities of the roadbed.

▪ The court instructed the jury with reference to the duty of the driver of the truck to operate his vehicle upon the right-hand side of Scott Street and at the speed prescribed. Appellants complain that these instructions were upon matters not in issue inasmuch as the negligence charged was limited to the intersection, and the conduct of the driver before reaching that portion of the street was immaterial and could in no way have contributed to the accident. We find no merit in the contention.

▪ The court instructed the jury as follows: "Before the plaintiff can recover in this action it must first appear by a preponderance of the evidence that the defendants, or their servants, were guilty of some act of negligence which contributed proximately to the accident."

Appellants complain that this instruction permitted the jury to return a verdict for plaintiff if any act of negligence on the part of the truck driver was proven, without regard to the scope of the complaint. However, a further instruction was given that plaintiff could not recover unless she proved by a preponderance of the evidence all the material allegations of her complaint with reference to the alleged conduct of defendants. We see no serious error in the instruction. Obviously it was intended as a general preliminary instruction and was a correct statement in the

abstract. A similar contention has been passed upon adversely to appellants' claims in the case of *Kelley* v. *Hodge Transportation System,* 197 Cal. 598 [242 Pac. 76]. The case here was fully and carefully tried, and the theories and defenses of all parties fully presented and argued, and, as said in the Kelley case (*supra*), the jury could not have been led into the realm of surmise as to other acts of negligence.

This covers appellants' claims of error on instructions given. There are other specifications of error predicated on instructions given that we deem do not deserve discussion. We find these last to be without merit of any kind, exclusive perhaps of novelty.

The appellants complain that the trial court erred to their prejudice in refusing to give certain instructions requested by them. The court refused to instruct the jury that the mere fact that the truck and the street-car collided did not afford the slightest evidence that the collision was caused by negligence on the part of the truck driver. Likewise, the court refused to tell the jury that the mere fact that the truck ran upon or was forced upon the sidewalk and struck and injured plaintiff did not furnish the slightest evidence of the truck driver's negligence.

As hereinbefore noted, the court did instruct the jury as to the burden of proof, and further instructed the jury as follows: "It is not sufficient for plaintiff to establish that she received injuries and that she received them through being struck by defendants, but plaintiff must further prove that the accident and resulting injuries were proximately due to the negligence of the defendants." The jury were also told that there was no legal presumption of negligence, and that plaintiff must prove by a preponderance of evidence that the accident was proximately due to negligence of defendants.

The jury were fully and correctly instructed, and the mere fact that the trial judge declined unnecessary repetition affords appellants no ground for reasonable complaint. Without citation of authority it may be almost dogmatically stated that parties litigant cannot demand that the law, as given to a jury, be phrased in language chosen by themselves regardless of how otherwise given. Further, it seems that the mere presence of a five-ton truck on the sidewalk

and moving into a doorway, running down people in its progress, would in itself measure up to "the slightest evidence" of negligence.

The court refused an instruction based upon the presumption of law that a person is innocent of wrong and that the law has been obeyed. Under the case of *Olsen* v. *Standard Oil Co.*, 188 Cal. 24 [204 Pac. 393], the instruction might properly have been given. However, ample facts appeared to render unnecessary a recourse to presumption, and we think the instructions given by the court were ample to insure against any imagined harm from the refusal to instruct as requested on these matters.

The appellants complain of the court's refusal to instruct the jury, as requested by them, on the question of right of way. This point has been sufficiently covered hereinbefore in discussing the instructions given.

We repeat, that even if there was merit in appellants' contention, no harm results to them in the face of their own negligence. The main issue here was the speed of the streetcar and of the truck. If both were violating the law in this respect plaintiff is not forced to determine which should have yielded, but is entitled to her recovery against both.

Appellants next urge error in the trial court's refusal to instruct as to the truck driver's right to presume that all other persons, street-cars, etc., using the streets would obey the law. The court did instruct the jury that it was not negligence to fail to anticipate the violation of law by any person, and at these appellants' request instructed the jury that operators of vehicles have a right to expect that those in charge of street-cars will operate them in the manner and run them at the speed which is customary at the particular place, and that they will give the usual warnings and signals, and use at least ordinary care to avoid injury to others. (See *Rush* v. *Lagomarsino,* 196 Cal. 308 [237 Pac. 1066] ; *Truitner* v. *Knight,* 83 Cal. App. 655 [257 Pac. 447].)

Appellants complain of the court's action in the modification of a requested instruction. The point raised has been elsewhere disposed of herein.

The foregoing disposes of the instructions. Appellants urge further that the court erred in its rulings on the admission and rejection of testimony.

We have gone carefully through every specification of error based on this claim, and find no merit in any. The evidence excluded was elsewhere covered, and the evidence admitted was to a great extent nonessential, and where essential it embraced largely the testimony of a photographic expert and the result of his experiment. On the class of testimony last mentioned the court has much discretion (*Sonoma County* v. *Stofen,* 125 Cal. 32 [57 Pac. 681]; *Western Soil etc. Co.* v. *O'Brien,* 49 Cal. App. 707 [194 Pac. 72]; *People* v. *Spencer,* 58 Cal. App. 197, 228 [208 Pac. 380]).

Lastly, the appellant, Golden Gate Building Materials Co., a corporation, attacks the verdict and judgment as unsupported on the issue of its connection with the truck or the driver thereof.

The truck in question was owned by McDaniel and Barrymore, a copartnership. At the time of the accident it was being operated by one Ray Palamountain, and was loaded with gravel which was being hauled for Golden Gate Building Materials Corporation. In order that we may better view the exact relationship between the copartnership and the corporation, with reference to the question, we will outline the facts:

Barrymore and McDaniel were copartners. These gentlemen were men of little means and unable to fully finance their operations. They purchased, upon contract of conditional sale, a number of trucks and entered into a contract with the corporation for the hauling of materials. When they took the hauling contract they entered into a contract with the corporation whereby it was agreed that within a period of three years the corporation could buy the trucks from them. In other words, the corporation had an option to take the trucks if they wanted them, and incidentally this option was exercised after the date of the accident. At the time of the accident, Barrymore, one of the partners, was the sales manager for the corporation, and after the transfer of the trucks he remained as vice-president of the corporation. The office of the copartnership was at the same address as the office of the corporation, and the directing foreman of the corporation was one Jones. The driver, Palamountain, reported to Jones daily and from him received his orders for the day. The truck here involved had painted upon it

in large letters the name of the corporation and was used exclusively by the corporation. The driver, Palamountain, was carried on the books of the corporation as an employee and each week his wages were paid by the corporation. In this connection it may be noted that the hauling contract was on a tonnage basis, and the payments were made thereunder but once a month. The wages paid by the corporation weekly were charged against the amount due the partnership at the end of the month. The driver, Palamountain, received his orders from Jones of the corporation, though the testimony of appellants restricts the authority of Jones to routing the trucks and giving orders simply as to places to and from which loads should be carried, with no absolute power of hiring or discharging drivers, although, if a driver did not appear for work, he did employ other drivers, the partners claiming, however, that the men thus employed by Jones were subject to their approval or discharge.

From these facts—which were the facts presented by appellants themselves—certain prominent features appear. There was some privity of relationship between the partnership and the corporation evidenced by the contract as to the purchase of the trucks by the corporation. Speaking generally, it is unlawful for one holding personal property under a conditional sale to transfer or sell the same. To the extent that the corporation did hold an option to purchase the trucks of the copartnership, it is apparent that it had some interest therein, unlawful perhaps, but nevertheless enforceable as between the parties themselves. This relationship between the appellants is further manifest in the fact that one of the partners, Barrymore, was sales manager for the corporation, and that the corporation and copartnership occupied the same office. The truck being used exclusively in the business of the corporation, and the corporation having this option to purchase from the copartnership, it may readily be inferred that the original purchase by the copartners was solely for the purpose of doing the corporation hauling. The fact that when the corporation took over the trucks under its option of purchase, or thereabouts, the copartnership was dissolved and the former sales manager became vice-president of the corporation likewise has probative effect upon the issues involved. Courts have recognized the difficulty one meets

in attempting to prove the exact relationship existing between parties in cases such as this. The true facts are peculiarly within the knowledge of the appellants here. The law at no time requires demonstration, and the rule of evidence has its widest scope in these cases. ▮ It is now well settled in this state that there may exist at one time the relationship of general employer and a special employer as to one employee. There is nothing in our decisions which would prevent our following the rule that in some cases where, at the time of an accident, both the general and special employer exerted some measure of control over the employee through their respective foremen, both should be held liable (*Famous Players Lasky Co.* v. *Industrial Accident Commission,* 194 Cal. 134 [34 A. L. R. 765, 228 Pac. 5] ; *Pruitt* v. *Industrial Accident Commission,* 189 Cal. 459 [209 Pac. 31] ; *Diamond Drill Co.* v. *Industrial Acc. Com.,* 199 Cal. 694 [250 Pac. 862]). In all cases the question to a great extent becomes one of fact for the jury. ▮ From the facts as outlined here and the inferences that could logically be drawn therefrom, the jury here might have found either that the corporation itself was the real employer, or was so far interested as to make the employment of the truck driver a joint employment. The jury, from the facts, might have concluded that there did exist both a general and special employment, subjecting both the copartnership and the corporation to a liability for the negligent acts of the truck driver. We cannot say as a matter of law that the finding of the jury has no support in the evidence. From the admitted facts, all of the testimony coming from the appellants, the finding of the jury finds ample support and it was not compulsory that the jury accept as true the explanation offered by appellants to alter the effect thereof.

Appellants' motion for a new trial was properly denied.
The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1928.

All the Justices present concurred.